UNITED STATES of America,
Appellee,

v.

William H. MILLER, Defendant-Appellant.

UNITED STATES of America,
Appellee,

v.

Maurice GREGORY, Defendant-Appellant.

Nos. 71–1298, 72–1008.

United States Court of Appeals,
First Circuit.

No. 71–1298—Submitted June 5, 1972.

No. 72–1008—Heard June 5, 1972.

Decided July 7, 1972.

eight other defendants [1] for violations of federal narcotics laws. Each appellant was charged with conspiracy to sell heroin in violation of 26 U.S.C. § 7237(b) [2] and sale of heroin in violation of 26 U.S.C. § 4705(a).[3] Following three weeks of testimony, the jury convicted them on both charges. Gregory raises three grounds for reversal; Miller joins in the first of these.

### I

At various times throughout the trial as many as six defense attorneys participated in the cross-examination of individual prosecution witnesses. In order to curb repetitive questioning the district court instructed that once a topic had been pursued on cross-examination, repetitive questioning on the same subject would not be permitted. For this ruling the court relied on Amsler v. United States, 381 F.2d 37, 51 (9th Cir. 1967). Appellants claim that this restriction violated their sixth amendment rights of confrontation and effective assistance of counsel.

The extent to which cross-examination shall be allowed rests within the sound discretion of the trial court, Harris v. United States, 367 F.2d 633, 636 (1st Cir. 1966), cert. denied, 386 U.S. 915, 87 S.Ct. 862, 17 L.Ed.2d 787 (1967), and that discretion may include a determination that a subject has been exhausted and further questioning is merely repetitive, United States v. Morabette, 119 F.2d 986, 988 (7th Cir. 1941). The court's order was entered only after defense counsel had been cautioned numerous times against repetition. The order did not foreclose relevant areas of interrogation, and the court stated that questions for the sake of clarification would be permitted. In addition, subsequent to its order the court did permit seem-

———◆———

E. Peter Mullane, Cambridge, Mass., by appointment of the Court, on brief for William H. Miller, appellant.

Stanley R. Lapon, Cambridge, Mass., by appointment of the Court, for Maurice Gregory, appellant.

James B. Krasnoo, Asst. U. S. Atty., with whom Joseph L. Tauro, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Maurice Gregory and William H. Miller, appellants, were tried along with

1. Four of these defendants pleaded guilty during trial and the remaining four were acquitted by the jury.

2. Repealed. Pub.L. 91–513, § 1101(b) (4) (A), October 27, 1970, 84 Stat. 1292, effective date of repeal being May 1, 1971, Pub.L. 91–513, § 1105(a).

3. Repealed. Pub.L. 91–513, § 1101(b) (3) (A), October 27, 1970, 84 Stat. 1292, effective date of repeal being May 1, 1971, Pub.L. 91–513, § 1105(a).

ingly repetitive cross-examination on counsel's assurance that he was leading to a different point. Appellants suggest no significant incidents of prejudice, nor could they. The trial was handled both judiciously and expeditiously, and the curb on needless repetition was well within the court's discretion.

## II

■ Relying on Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L. Ed. 680 (1942), Maurice Gregory claims deprivation of effective assistance of counsel on the ground that the same attorney was appointed to represent both him and his brother Mellie. At the start of the trial defense counsel Shorr related to the court that both Gregory brothers had requested his representation, but in light of his brief contact with the case he did not know whether a conflict of interest existed. Shorr requested the court's "opinion and observation" on the matter. The court, properly sensitive to the possibility of prejudice, asked the Assistant United States Attorney, who had presented the case to the grand jury, if he knew of any possible conflict. The prosecutor responded that Maurice had played a far greater role in the conspiracy, but that he was aware of no conflicting interests. On the basis of this assertion the court found there was no conflict of interest, and neither Shorr nor the Gregorys objected to this finding.

Two days later, and still before testimony had begun, Shorr moved for leave to withdraw as Maurice's attorney. He stated as grounds therefor the differing degrees of involvement and the general fear that Mellie would be prejudiced by the dual representation. The court reserved judgment on this motion. Midway through trial Shorr moved for a mistrial on Mellie's behalf, asserting that he found it "difficult" to represent both defendants. The next day the court appointed separate counsel for Mellie, who was subsequently acquitted by the jury.

The term "conflict of interest" bespeaks a situation in which regard for one duty tends to lead to disregard of another. Goitia v. United States, 409 F.2d 524, 527 (1st Cir.), cert. denied, 397 U.S. 906, 90 S.Ct. 896, 25 L.Ed.2d 86 (1969). Attorney Shorr could state only the most speculative possibility of conflict. His concern that it would be difficult to clarify repeatedly that testimony relating to "Gregory" referred to Maurice and not to Mellie was obviated by the court's assumption of that task. The differing degrees of proof against the two brothers is in and of itself insufficient to establish prejudicial conflict of interest, United States ex rel. Ross v. LaVallee, 448 F.2d 552, 555 (2d Cir. 1971), and counsel on appeal was unable to relate any less speculative conflict. Cross-examination during the period of joint representation was directed primarily towards impeachment, and the brothers' interests in that impeachment were not dissimilar. The record does not indicate the kinds of possible conflicting interests such as existed in Glasser v. United States, *supra*. No specific prejudice or significant conflict having been asserted to the court below, and none appearing from our study of the record, we can find no error or constitutional deprivation in the joint representation.

## III

■ Appellant Gregory's third and final contention on appeal is that the court erred in trying him *in absentia*. On July 19, 1971, with Gregory present, the case was called for trial and a panel of jurors and alternates was selected. However, the jury was not sworn. The next day Gregory did not appear. The trial was continued for two days while the authorities looked for Gregory, checking hospitals, hotels, and mortuaries. On July 22, having found that Gregory had voluntarily absented himself, the court ordered that the trial proceed without him.

Rule 43, Fed.R.Crim.P. provides that in noncapital cases a "defendant's voluntary absence after the trial has been

commenced in his presence shall not prevent continuing the trial to and including the return of the verdict." Gregory alleges that the trial does not "commence" until the jury is not only impaneled, but sworn. Language, not used for that purpose, may suggest that so far as the attachment of jeopardy is concerned the swearing of the jury is the significant event. *Cf. e. g.*, Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); United States v. Collier, 362 F.2d 135, 140 (7th Cir.), cert. denied, 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966). However, even assuming that such language is to be strictly accepted, Rule 43 refers not to the commencement of jeopardy but to the commencement of trial. The rule could have said jeopardy had that been the intent.

 With regard to a defendant's presence at trial, the trial commences "at least" from the time that the work of impaneling jurors begins. Hopt v. Utah, 110 U.S. 574, 578, 4 S.Ct. 202, 28 L.Ed. 262 (1884). The challenging of prospective jurors is an essential part of the trial, as shown both by the case law, Lewis v. United States, 146 U.S. 370, 374, 13 S.Ct. 136, 36 L.Ed. 1011 (1892), and by Rule 43's reference to "every stage of the trial including the impaneling of the jury." The concept that a defendant could go through trial proceedings to the point of selecting the entire jury and then, perhaps because he was dissatisfied with the complement thereof, freely depart, does not appeal to us. To draw the bright line at the formality of swearing the jury would frustrate the purpose of Rule 43. Gregory was present when the jury was selected, and the court's finding that his absence was voluntary was well supported.[4] The trial could properly continue despite his absence.

Affirmed.

4. In addition to the fruitless search for the defendant, evidence was presented of his possible surrender to authorities in New York. Moreover, at his sentencing

several months later, the only explanation offered by Gregory for his absence was his fear that he would not get a "fair shake."