**UNITED STATES of America, Appellee,**

v.

**John ALVAREZ, Defendant-Appellant.**

**No. 79–1028.**

United States Court of Appeals,
First Circuit.

Argued May 5, 1980.
Decided July 28, 1980.

Ann Lambert Greenblatt, Boston, Mass. by appointment of the Court, for defendant-appellant.

Justo Arenas Fernandez, Asst. U. S. Atty., San Juan, P. R., with whom Raymond L. Acosta, U. S. Atty., San Juan, P. R., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

Appellant was indicted and convicted of conspiring, over a period of ten days, to distribute eight pounds of cocaine (count one); of aiding and abetting one Cabrera in an attempt to distribute eight pounds of cocaine on August 9 (count six); and of possession, with intent to distribute, of a quantity of cocaine on August 9.

Appellant's first set of claims is that the evidence at trial was insufficient to support his conviction of membership in the ten day conspiracy, of aiding and abetting in distribution, and of possession of cocaine. The relevant events are as follows: The central character was one Cabrera. His sale of one ounce of cocaine on August 1, 1978, to a government informer to whom he had been introduced by a co-defendant, Hernandez, is the subject matter of a companion case, decided previously. *United States v. Hernandez*, 625 F.2d 2, (1st Cir. 1980). On August 2, Cabrera and a Drug Enforcement Agent, Garcia, met at Cabrera's apartment to complete the purchase of four and one half ounces of cocaine. They also discussed the possible purchase of two kilos of cocaine. As the agent was leaving Cabrera's apartment, he saw appellant entering. The two did not speak to each other.

Garcia in the next few days had some five telephone conversations with Cabrera concerning price and quantity of the proposed sale. On August 9, Garcia met Cabrera in a restaurant near the Caribe Hilton hotel to purchase seven and one half pounds of cocaine. Garcia then entered a 1977 Maverick driven by Cabrera, who gave him a sample, saying that the purchase price was $120,000. Cabrera, after driving around the immediate vicinity, dropped Garcia off at the hotel to obtain the necessary money. Garcia then met with other DEA agents, prepared a decoy money bag, and arranged for an arrest signal. Meanwhile, other agents observed Cabrera drive off to a nearby street and stop next to a white panel truck. The drivers of the two vehicles conversed with each other for a few seconds. They then circled a nearby park area twice (or three times) and finally double-parked at the restaurant, the truck being in front of the Maverick.

Agent Garcia returned, met Cabrera, and gave a prearranged arrest signal. Two agents attempted to arrest Cabrera, but shots were fired, agent Garcia was felled, and the Maverick sped off. Another agent went to the white panel truck, the engine of which was running, and identified himself in Spanish as a federal agent to the driver and a passenger. The driver was appellant. When the agent ordered appellant to get out of the truck, he was shot at twice from the truck and the agent shot once at appellant. Appellant screamed and drove off. A chase ensued, agents called to appellant, "Police! Federal Agents! Stop!" but appellant's response was to try to force the pursuing vehicle off the road. Shots were exchanged from both the pursued and the pursuing vehicle. Finally, near the Tapia Theater, speed was reduced, a passenger fled from the truck, the truck went on a few blocks and finally stopped. The agents

approached the truck and appellant, wounded and bleeding, got out of the truck, right arm raised. He was soon taken to a dispensary.

A search of the Maverick yielded, in addition to a weapon (with silencer) and ammunition, a Hertz Rent-A-Car lease agreement and credit card receipt, both bearing appellant's signature, and a New York driver's license in appellant's name. A search of the white truck produced a plastic pouch, 148 grams of cocaine, a bank book in the name of co-conspirator (and fugitive) Lopez Cepero and a Puerto Rico driver's license in Lopez Cepero's name.

One added piece of information is appellant's testimony that he arrived ·in Puerto Rico on August 2, 1978, and thereafter alternated staying at Cabrera's home and at co-conspirator Cepero's home for eight or nine days.

The critical facts bearing on appellant's membership in the overall conspiracy are: (1) that he knew and stayed with or close to Cabrera and another co-conspirator during the period of the conspiracy; (2) that, at the place and time planned for the delivery of seven and one half pounds of cocaine, Cabrera, the ring leader, was driving a car leased to appellant, and containing appellant's driver's license; (3) that appellant was parked in the white truck at a location near the locus of the planned delivery, which place was known to Cabrera; (4) that Cabrera and appellant talked briefly together and circled the nearby Munoz Rivera park area at least twice while awaiting receipt of the purchase price from Garcia; (5) that appellant, despite the announced identification of a federal agent, sped away in his truck,[1] from which the agents were shot at, and tried to run his pursuers off the road; and (6) that the truck contained a bank book and driver's license in the name of a co-conspirator as well as cocaine and a container pouch.

■ From these facts the jury could infer that appellant not only knew the principal conspirators and the details of the transaction planned for August 9, but had taken considerable pains to deploy himself to be of help to Cabrera in advice, surveillance, and defense. The jury could have concluded that appellant's flight in a truck from which shots were fired at the agents and his attempt to force the pursuing car off the road stemmed from consciousness of guilt rather than defense of his own person. The contents of the vehicle could be thought to have indicated a close working relationship with both Cabrera and the fugitive co-conspirator. The evidence and the reasonable inferences to be drawn therefrom support a conclusion that appellant was tied to the entire scheme by more than mere presence at one event.

■ All that we have said concerning the conspiracy conviction is supportive, *a fortiori*, of the conviction under count six of aiding and abetting Cabrera in attempting to distribute cocaine on August 9. And the discovery of such a considerable amount of cocaine in the white truck under the circumstances could have reasonably led the jury to have found either that appellant was asserting control over the material or that he was sufficiently involved as a co-conspirator with Cepero as to be properly charged with constructive possession under the circumstances.

■ Appellant belatedly, not having made objection below, claims as plain error the giving of an instruction drawn from *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), to the effect that if the jury found that a conspiracy existed, that substantive offenses were committed as part of that conspiracy, and that appellant was a member of the conspiracy at the time, he could be convicted of such offenses without having personally participated in them. Appellant merely points to Judge Friendly's disapproval of this charge in marginal cases, *United States v. Sperling*, 506 F.2d 1323, 1341–42 (2d Cir.

---

1. Appellant's version is that he felt that a hold-up was threatened, but the jury would be permitted to draw an inference of guilty flight.

The facts are reminiscent of the escape attempt in *United States v. Petrozziello*, 548 F.2d 20 (1st Cir. 1977).

 

1974). Even in the Second Circuit, however, the giving of the charge is within the judge's discretion, *United States v. Corr*, 543 F.2d 1042, 1050 (1976), which was not abused here.[2]

■ Cabrera, at his guilty plea proceedings, through his counsel, stated that he admitted being in a conspiracy with all defendants mentioned (presumably Hernandez and the fugitive Cepero) except appellant. Now appellant argues that his trial counsel's failure to call Cabrera as a witness denied him effective assistance of counsel, since Cabrera "was the only witness who could establish that Alvarez was not involved". Favorable detailed testimony exonerating appellant might have been forthcoming had Cabrera been called to the stand, although it is difficult to conceive of a persuasive accounting of appellant's acts consistent with innocence. In any event it is at least equally possible that Cabrera, being subjected to detailed cross examination, might further inculpate appellant. Trial counsel's decision cannot, even in retrospect, be deemed faulty on this record.

■ Appellant next raises for the first time the properly criticizable delinquency of the court reporter in failing to prepare full transcripts of district court proceedings for fifteen months during which appellant has been incarcerated. Such precedent as there is has involved timely presentation of the issue in a proceeding directly seeking release by reason of such delay, rather than, as here, an afterthought added to help carry the freight of an appeal which, despite transcript difficulties, has been fully developed. Additionally, appellant has not called our attention to any specific prejudice suffered. Much as we deplore the sluggishness of much transcript preparation, the delay in this case falls far short of plain error.

■ Appellant's final assertion is that the inclusion in his sentence for violating the conspiracy provision of 21 U.S.C. § 846 of a special parole term of three years is not authorized by the statute. In light of the recent Supreme Court decision in *Bifulco v. United States*, —— U.S. ——, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980), this assertion is correct, and the case is remanded to the district court with instructions to vacate the special parole term imposed on appellant.

*Affirmed in part, remanded in part.*

---

2. Appellant was in fact acquitted of firing at the Drug Enforcement Agent.