**UNITED STATES of America, Appellee,**

v.

**Frederick Charles LATHAM, Jr.,
Defendant, Appellant.**

No. 88–1107.

United States Court of Appeals,
First Circuit.

Heard Nov. 4, 1988.

Decided May 10, 1989.

Valerie Stanfill with whom Jack H. Simmons and Berman, Simmons & Goldberg, P.A., Lewiston, were on brief, for defendant, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., and Nicholas M. Gess, Asst. U.S. Atty., Portland, Me., were on brief, for appellee.

Before BOWNES and SELYA, Circuit Judges, and CAFFREY,* Senior District Judge.

* Of the District of Massachusetts, sitting by designation.

BOWNES, Circuit Judge.

Defendant-appellant Frederick Latham, Jr. appeals his guilty verdict stemming from cocaine related charges. He claims that: (i) his constitutional right to be present at his own trial was violated; (ii) the court's instruction regarding possession with intent to distribute cocaine was plain error; and (iii) the government failed to disclose evidence favorable to him. We reverse the conviction on the count of possession with intent to distribute cocaine, and remand for a new trial on the count of conspiracy to possess with intent to distribute cocaine.

## I. BACKGROUND

On April 16, 1987, Sergeant Harold Bickmore and Trooper Patrick Lehan of the Maine Police Department set up a meeting through a confidential informant, Mr. Geisinger, in which they bought one-half gram of cocaine for $50 from Irving Myrick. Bickmore testified that Myrick said: "[I]f I wanted more he could get it. He was able to get more but it would be from a different supplier ... that he could get me up to four ounces of cocaine." According to Bickmore, in a telephone conversation the following day, Myrick "told me what he would do is show me an ounce sample...." Bickmore and Lehan met Myrick at the appointed place. Defendant Frederick Latham, Jr. appeared on the scene for the first time when he subsequently joined them. After some discussion, an evening meeting to be attended by Latham, Myrick, Bickmore and Lehan was arranged. The meeting was held and Latham produced a bag containing just under one ounce of cocaine. Bickmore testified that both Latham and Myrick clearly stated that this sample of cocaine was for their own personal use and not for sale. At the trial, there was testimony by a government witness, David Ford, that a heavy user could go through an ounce of cocaine in 1½ – 2 days. According to Bickmore, Latham told them that "it was a sample of what he could get us, if we wanted four ounces like this, the deal would go down in Portland." The officers decided not to go to Portland

and arrested Latham and Myrick on the spot. Bickmore testified: "[W]e decided that we were going to arrest Myrick and Latham, at that time, because it didn't appear to us that we were going to, that they were actually going to go through with a four ounce deal or we really were not sure who they would be dealing with...."

Lehan was wearing a body wire recording device during these meetings. Bickmore testified that the tape did not operate because of some malfunction. Defense counsel was never given the tape recording, nor did the government tell him of its existence. In his brief supporting the motion for a new trial, Latham's defense counsel states that he discovered that a tape recording had been made upon reading the transcript of the guilty plea entered by Myrick.

Latham was charged on two counts: (i) conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and § 846, and (ii) possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2.

Latham's jury trial commenced on September 9, 1987. On that day, three government witnesses testified and two of them were cross-examined. In the afternoon, Latham stated that he was not feeling well and the judge recessed the trial early at 3 p.m., ordering that the trial be reconvened the next morning, September 10, 1987, at 9:00 a.m. On September 10, 9:00 a.m., Latham did not appear for the trial. In chambers, the court inquired as to Latham's whereabouts, and Latham's attorney stated that he did not know where Latham was. Latham's attorney then tried unsuccessfully to reach Latham by telephone. The court revoked Latham's bail and issued a bench warrant for his arrest. The chambers conference was reconvened at 10:13 a.m. and the court noted that in the interim the Assistant United States Attorney had called three hospitals, Maine Medical Center, Mercy Hospital, and Osteopathic Hospital, and four jails, and that Latham was not at any of these places. The judge also told counsel that the United States Marshal's

Office had been informed by a clerk at United Airlines that at 7:10 a.m. Latham had boarded a United Airlines plane at the Portland, Maine airport, bound for Chicago, and that Latham was expected to be on the ground at O'Hare Airport in Chicago to connect with a flight leaving at 10:55 a.m. for Little Rock, Arkansas. Based on this information, the judge instructed the Marshal to apprehend Latham.

Latham's attorney asked for a continuance of the trial as it appeared that Latham would very shortly be arrested and returned for trial. The court denied the motion for a continuance. Concluding that the defendant had voluntarily absented himself from the trial, the court, over defense counsel's objection, ordered, pursuant to Fed.R.Crim.P. 43, that the trial recommence in Latham's absence at 10:30 a.m. The trial had been delayed a total of 1½ hours.

A significant portion of the trial was conducted on the second day in Latham's absence: one of the government's key witnesses, David Ford, was cross-examined; closing arguments were made; and jury instructions were given. In the afternoon, the jury found Latham guilty on both counts. Latham was sentenced to ten years on each count, and five years of supervised release on each count, said sentences to be served consecutively. Latham duly appealed his conviction.

On September 21, 1987, Latham moved for judgment of acquittal or, in the alternative, for a new trial. In his memorandum in support of these motions,[1] Latham's attorney argued that Latham did not attempt to flee, but rather, that he was incapacitated and unable to attend the last day of the trial. The attorney stated in his memorandum that he had visited Latham on September 15, 1987, at the Maine Medical Center where Latham had been hospitalized as a result of a cocaine overdose. Latham's attorney further stated that Latham told him at this time that he fully intended to attend his trial, but that he became so nervous about the trial that he ingested a large quantity of cocaine, left his room, and

remembered nothing after that. Latham's attorney also included in his memorandum facts which indicated that the defendant might have been forced to ingest the cocaine involuntarily: that when Latham was found he was covered with recent bruises and cuts and appeared to be beaten quite badly; that his family and attorney were not allowed to visit him in the hospital for "security reasons" even though the doctors were giving him only a 25% chance of survival; and that the Assistant United States Attorney had stated that "there's more going on here than you know about." In a letter to the court dated December 4, 1987, the defense attorney again raised the issue that coercion or duress may well have occasioned the overdose and that fear was preventing Latham from being forthcoming about the circumstances surrounding the incident. The memorandum further stated that Latham denied buying an airplane ticket.

On December 31, 1987, the court denied Latham's motion for judgment of acquittal or for a new trial. Latham's attorney had repeatedly requested an evidentiary hearing in order to establish the cause of his absence from trial: on October 19, 1987 in his reply brief on the post-trial motions; on November 13, 1987 at the sentencing hearing; and again in a letter to the court on December 4, 1987. The court refused to hold such an evidentiary hearing.

There is no dispute that the information the court had received on September 10 that Latham had taken a plane to Chicago was false. Latham had been hospitalized in the Maine Medical Center in Portland, Maine in critical condition, due to an overdose of cocaine. The facts surrounding this overdose have not been fully developed on the record because Latham's motions for an evidentiary hearing were denied. The record does, however, show that both at sentencing and when the court ruled on the post-trial motions, the court was aware that the reason for Latham's absence was cocaine intoxication and not a flight to Chicago. In a letter to the district judge dated

1. No affidavit accompanied this memorandum.

September 23, 1987, the Assistant United States Attorney stated that Latham had been transferred from the Maine Medical Center to the Federal Prison Hospital in Springfield, Missouri. The post-trial motion briefs by both the defendant and the government, dated September 21 and October 5, 1987, respectively, comment extensively on the cocaine overdose. At the sentencing hearing the government stated that Latham had ingested "a substantial quantity of cocaine during the trial," and defense counsel stated that "part of the motion deals with the situation of the overdose and cocaine intoxication." In imposing sentence, the court stated that it had "reviewed fully the written presentence investigation report ... dated October 6 from Mr. Hubble, case manager, Federal Bureau of Prisons, where Mr. Latham was treated for the drug overdose...."

There can be no doubt that the court knew, at the time of sentencing and when he denied the motion for acquittal or a new trial, that the defendant had not voluntarily absented himself from the second day of trial by fleeing on an airplane, but was in a hospital in critical condition due to an overdose of cocaine.

## II. A DEFENDANT'S RIGHT TO BE PRESENT AT HIS TRIAL

The constitutional right of a defendant to be present at his trial is rooted in both the due process and confrontation clauses of the Constitution. The Supreme Court held long ago that the due process clause of the fifth amendment requires the defendant's attendance at his trial. *Hopt v. People of the Territory of Utah*, 110 U.S. 574, 579, 4 S.Ct. 202, 204, 28 L.Ed. 262 (1884). More recently, in holding this principle applicable to the states, the Court stated: "[T]he defendant has the privilege under the Fourteenth Amendment to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge," and "the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence." *Snyder v. Mas-*

*sachusetts*, 291 U.S. 97, 105–06, 107–08, 54 S.Ct. 330, 332, 333, 78 L.Ed. 674 (1934). *See also Kentucky v. Stincer*, 482 U.S. 730, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987); *United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985); *Faretta v. California*, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975). In the instant case, such due process concerns are clearly present. An important portion of Latham's trial requiring his presence remained to be conducted: cross-examination of a key government witness; decisions as to rebuttal witnesses; possible testimony by Latham himself; and closing arguments. Latham had no opportunity to consult with his attorney and take part in these important trial decisions.

The confrontation clause of the sixth amendment also guarantees the right to be present at one's own trial: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." *See, e.g., Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970). The Supreme Court has held that "the privilege to confront one's accusers and cross-examine them face to face is assured to a defendant by the Sixth Amendment" and is satisfied by "the presence of the defendant." *Snyder v. Massachusetts*, 291 U.S. at 106, 54 S.Ct. at 332. The sixth amendment guarantees the right of an accused to be "present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. at 338, 90 S.Ct. at 1058. The Court has emphasized that "a primary interest secured by [the confrontation clause] is the right of cross-examination," *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965), and that "[t]he opportunity for cross-examination ... is critical for ensuring the integrity of the fact-finding process," *Kentucky v. Stincer*, 107 S.Ct. at 2662. As noted above, cross-examination of David Ford, a key government witness against Latham, was conducted in Latham's absence. Thus, violation of Latham's sixth amendment rights are implicated.

## III. ABSENCE FROM TRIAL

The Supreme Court has long held that if a defendant *voluntarily* absents himself from the courtroom during trial, it "operates as a waiver of his right to be present and leaves the court free to proceed with the trial in like manner and with like effect as if he were present." *Diaz v. United States*, 223 U.S. 442, 455, 32 S.Ct. 250, 254, 56 L.Ed. 500 (1912). *See also Taylor v. United States*, 414 U.S. 17, 19–20 n. 3, 94 S.Ct. 194, 195–96 n. 3, 38 L.Ed.2d 174 (1973) (per curiam) ("[i]f a defendant at liberty remains away during his trial the court may proceed provided it is clearly established that his absence is voluntary.... [H]e must have no sound reason for remaining away.") (quoting *Cureton v. United States*, 396 F.2d 671, 676 (D.C.Cir.1968)); *Illinois v. Allen*, 397 U.S. at 342–43, 90 S.Ct. at 1060; *Snyder v. Massachusetts*, 291 U.S. at 106, 54 S.Ct. at 332.

We have followed this teaching. *See United States v. Lochan*, 674 F.2d 960, 967 (1st Cir.1982) ("[I]t is well-settled that a defendant is entitled to be present at his trial but that this right may be waived by voluntary and deliberate absence from the trial without good cause."); *United States v. Miller*, 463 F.2d 600, 603 (1st Cir.) (because "the [district] court's finding that [the defendant's] absence was voluntary was well supported, [t]he trial could properly continue despite his absence"), *cert. denied*, 409 U.S. 956, 93 S.Ct. 300, 34 L.Ed.2d 225 (1972); *accord Dasher v. Stripling*, 685 F.2d 385, 387 (11th Cir.1982); *United States v. Benavides*, 596 F.2d 137, 139–40 (5th Cir.1979); *United States v. Pastor*, 557 F.2d 930, 933–34 (2d Cir.1977); *Cureton v. United States*, 396 F.2d 671, 676 (D.C.Cir.1968). In addition, Fed.R.Crim.P. 43(b) permits a district court to proceed with the trial if a defendant who is initially present voluntarily absents himself after the trial has commenced.[2]

■ A voluntary absence by the defendant, however, does not end our inquiry. The issue then becomes what standard the district court should apply in deciding whether to continue the trial when the defendant has voluntarily absented himself. The second circuit has articulated a test which has been followed by other circuits, including the first:

> [Proceeding with the trial when the defendant is voluntarily absent] is within the discretion of the trial judge, to be utilized only in circumstances as extraordinary as those before us. Indeed, we would add that this discretion should be exercised only when the public interest clearly outweighs that of the voluntarily absent defendant. Whether the trial will proceed will depend upon the trial judge's determination of a *complex of issues*. He must weigh the likelihood that the trial could soon take place with the defendant present; the difficulty of rescheduling, particularly in multiple-defendant trials; the burden on the Government in having to undertake two trials, again particularly in multiple-defendant trials where the evidence against the defendants is often overlapping and more than one trial might keep the Government's witnesses in substantial jeopardy.

*United States v. Tortora*, 464 F.2d 1202, 1210 (2d Cir.) (emphasis added), *cert. denied*, 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed. 2d 516 (1972). It must be noted that the court went on to say that "[i]t is difficult for us to conceive of any case where the exercise of this discretion would be appropriate other than a multiple-defendant case." *Id.* We have followed *Tortora* and

---

2. Fed.R.Crim.P. 43 provides, in pertinent part:

    (a) *Presence Required*. The defendant shall be present at the arraignment, at the time of the plea, at every stage of trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

    (b) *Continued Presence Not Required*. The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present, (1) is voluntarily absent after the trial has commenced (whether or not he has been informed by the court of his obligation to remain during the trial)....

The Supreme Court upheld the constitutionality of this rule in *Taylor v. United States*, 414 U.S. at 18, 94 S.Ct. at 195.

have required this type of careful analysis of a "complex of issues" before a court can proceed with a trial in the defendant's absence:

> Once voluntary absence is found, a district court must still determine, on motion, whether a severance would nevertheless be appropriate. Among the factors relevant to the district court's exercise of its discretion to sever are the following: the likelihood that a joint trial could take place in the future with the absent defendant present, the present co-defendant's right to a speedy trial, the difficulty of rescheduling the trial, and the burdens on the government and the court in running two trials where the evidence is overlapping.

*United States v. Lochan,* 674 F.2d at 967–68. *Accord United States v. London,* 723 F.2d 1538, 1539 (11th Cir.1984); *United States v. Pastor,* 557 F.2d at 934; *United States v. Peterson,* 524 F.2d 167, 185 (4th Cir.1975), *cert. denied,* 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976).

Thus, we must determine (i) if Latham voluntarily absented himself from his trial, and (ii) if the absence was voluntary, whether the district court properly took into account the "complex of issues" surrounding the circumstances of this case.

(i) *voluntary absence:*

Based on the record facts, it is fair to conclude that the district court based its decision on September 10 to continue with the trial in Latham's absence on the information it had received from the United States Marshal's office that Latham had fled and was on a plane to Chicago. This information shortly thereafter proved to be false. In fact, Latham was in a Maine hospital suffering from a potentially lethal overdose of cocaine that he had ingested.

■ As already noted, the court was aware of this at the time it denied defendant's post-trial motions. We can only conclude, therefore, that the court found that the ingestion of cocaine by the defendant constituted a voluntary absence from the trial. While there is some suggestion by defense counsel that Latham may have been forced to take this overdose, it is not necessary to determine the specific circumstances surrounding the ingestion of the cocaine, because even if Latham had voluntarily ingested the cocaine, that does not mean that he voluntarily absented himself from the trial.

The amount of cocaine Latham ingested was a potentially lethal overdose; the memorandum of his attorney states that the hospital gave him only a 25% chance of survival. Therefore, to conclude that Latham voluntarily absented himself from the trial, one would have to find that he either (a) knowingly took a lethal dose, or (b) had fine-calibrated the dosage so precisely that he would reach a critical medical condition, but would somehow manage to survive. Neither premise withstands scrutiny. It defies common sense to maintain that a sane defendant would attempt suicide to avoid a trial on drug charges. And, death is not the type of "voluntary absence from trial" that concerns us. Alternatively, if one were to find that Latham knew just the right amount of cocaine to ingest, so as to require hospitalization, but avoid death, it would still make no sense for him to have pursued this course because he would end up in custody (hospitalized) and upon recovery would still have to stand trial. This situation is markedly different from fleeing to avoid the trial altogether.

There have been no reasons presented by the government on appeal or by the district court in its rulings, that explain how a voluntary absence from trial can be predicated upon a voluntary ingestion of a near lethal dose of cocaine. Nor have we been able to think of one. It seems simply to have been concluded by the government and the district court that since the defendant voluntarily took drugs, he was *ipso facto* voluntarily absent from the trial. This is not sufficient for a finding of voluntary absence so as to waive a basic constitutional right. The explanation offered by the defendant, that he ingested the cocaine to calm himself because he was very nervous about the trial, and fully intended to attend the trial, seems a more plausible interpretation of the events.

We conclude that ingestion by Latham of an overdose of cocaine did not constitute a voluntary absence from trial, and the district court's holding that he had thereby waived his constitutional right to be present at his trial was clearly erroneous.

(ii) *complex of issues:*

■ Even if, *arguendo,* we were to conclude that the defendant had voluntarily absented himself from the trial, the additional inquiry into the "complex of issues" enunciated by the *Tortora* court, discussed *supra,* would dictate that the district court erred in concluding that the trial should proceed in the defendant's absence. There was a very high likelihood that the trial could soon take place with the defendant present. The information on which the court based its initial decision to continue with the trial in the defendant's absence was that the United States Marshal's office had been informed by a clerk at United Airlines that Latham was on a plane which had left Portland, Maine at 7:10 a.m. for Chicago, and that Latham was expected to be on the ground at O'Hare Airport in Chicago to connect with a flight leaving at 10:55 a.m. for Little Rock, Arkansas. If this were in fact the situation, there was a substantial probability that Latham could be apprehended at O'Hare airport within a few hours and returned for the trial. *See United States v. Beltran–Nunez,* 716 F.2d 287, 291 (5th Cir.1983) (if an inquiry reveals there is a reasonable probability that the absent defendant can be located shortly, and no argument has been made that the government's witnesses will be jeopardized, the district court abuses its discretion by proceeding with the trial in defendant's absence).

In addition, the basic information received from the airline clerk that Latham had fled on a plane could have been checked almost immediately. Thus, if the judge had waited a little beyond 10:30 a.m., when he reconvened the trial, it would have become evident that the data he had received and upon which he based his ruling was false. The district court in this situation was not making decisions in a vacuum—it believed it had the *specific times* of departure, landing, and connecting flights. Even in cases where no such explicit information concerning the whereabouts of an absent defendant is known, the vast majority of courts have waited much longer than 1½ hours before recommencing the trial without the defendant. *See, e.g., U.S. v. Taylor,* 478 F.2d 689, 690 (1st Cir.) (defendant did not return for afternoon session and court recessed until following morning), *aff'd,* 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973) (per curiam); *United States v. Sanchez,* 790 F.2d 245, 251 (2d Cir.1986) (trial postponed one day); *United States v. Schocket,* 753 F.2d 336, 338 (4th Cir.1985) (trial postponed nine days); *United States v. Benavides,* 596 F.2d at 138 (trial postponed until next day); *United States v. Miller,* 463 F.2d 600, 602 (1st Cir.) (trial postponed for two days), *cert. denied,* 409 U.S. 956, 93 S.Ct. 300, 34 L.Ed.2d 225 (1972).

The haste of the district court in recommencing the trial resulted in a decision of constitutional dimension being made which was based on false information. As the court in *Beltran–Nunez* stated:

[T]he decision to proceed with the trial in [the defendant's] absence, without further inquiry, was an abuse of the trial court's narrow discretion. At the time that the court noted the defendant's absence, it took no affirmative steps to ascertain whether the accused might be readily located, and it made no inquiry into the possibility of delaying the commencement of the trial slightly or of rescheduling the trial in order to obtain his attendance.

*United States v. Beltran–Nunez,* 716 F.2d at 290–91.

The other factors listed in the *Tortora* test are of particular concern only in multiple-defendant trials: rescheduling, burden on the government in conducting two trials instead of one joint trial, and jeopardy to government witnesses from the delay caused by two trials. In virtually all of the cases in which a conviction of a defendant obtained in absentia has been affirmed, other co-defendants were present for the trial. *See, e.g., United States v. Lochan,*

674 F.2d 960, 967–68 (1st Cir.1982) (the decision to sever a multi-defendant trial when one defendant is absent depends on: "the likelihood that a joint trial could take place in the future with the absent defendant present, the present codefendant's right to a speedy trial, the difficulty of rescheduling the trial, and the burdens on the government and the court in running two trials where the evidence is overlapping."); *United States v. Sanchez,* 790 F.2d at 251 (multi-defendant case where "severance would impose on the Government the burden of prosecuting two separate trials that would involve substantially the same evidence"); *United States v. Schocket,* 753 F.2d at 339–40 (a conspiracy case with four co-defendants, witnesses from at least four states, and where the safety of a government informer witness was a matter of concern); *United States v. Barton,* 647 F.2d 224, 238 (2d Cir.1981) (multi-defendant case involving more than 100 government witnesses, trial had already been postponed more than once, a panel of 250 veniremen had been arranged, and the trial judge was sitting by designation from another federal district); *United States v. Pastor,* 557 F.2d at 938 (multi-defendant case where 50 veniremen had already been called, where there was an enfeebled material witness, and where severance would have obligated the government to try the case, which took 12 days for trial, twice); *United States v. Peterson,* 524 F.2d at 185–86 (multi-defendant case where likelihood of defendant's speedy return was remote, where over 20 government witnesses had been assembled, where the government's chief witness had already proved recalcitrant, and where there would be great burden on the government in having to undertake two trials). None of these problems were present in the instant case, which was not a multiple-defendant trial.

This case falls within the parameters of *United States v. Benavides,* 596 F.2d at 140, where the court held that the trial court abused its discretion by proceeding with the trial, even though the defendants were voluntarily absent, because: the district court made no inquiry into whether the trial could be rescheduled; the govern-ment did not argue that a continuance would have inconvenienced anyone or that it could not have produced its witnesses if rescheduled; there was no need to proceed with the trial on behalf of other defendants because there were none; and there was no evidence that the government's witnesses would in any way be jeopardized.

The instant case is easily distinguished from *United States v. Muzevsky,* 760 F.2d 83 (4th Cir.1985), one of the very few cases in which a conviction of an absent defendant was affirmed even though there were no co-defendants. The court in that case found that the existence of special factors was sufficient to dictate such an affirmance: "[W]hen the court does not know the reasons for the defendant's absence and has no basis to believe that the trial can be rescheduled within a reasonable time, consideration of the government's difficulty in reassembling its proof may dictate an immediate trial." *Id.* at 85. No such factors were present when the district court made its decision to proceed in the instant case: the court believed it knew precisely where the defendant was, the defendant could have been apprehended and returned to trial in a short period of time, and the government had already presented its evidence.

Thus, the "complex of issues" which must be balanced even if the defendant is voluntarily absent, leads to the conclusion that the district court should not have proceeded with the trial in Latham's absence after only a 1½ hour delay.

We hold that, in light of all the circumstances, Latham was improperly denied his constitutional right to be present at his trial and must be granted a new trial.

## IV. JURY INSTRUCTIONS

One of the counts against Latham was possession with intent to distribute cocaine. The statute reads in pertinent part: "[I]t shall be unlawful for any person knowingly or intentionally to ... possess with intent to ... distribute ... a controlled substance." 21 U.S.C. § 841(a)(1). It is not disputed that the defendant possessed the

one ounce of cocaine that he showed to the undercover officers. The contested issue is whether that possession was with the intent to distribute.

■ In its instructions to the jury the district court stated:

I instruct you that possession of a specific quantity of cocaine, with the intent, if that occurs, that its possession or use would cause or facilitate the distribution of a separate quantity of cocaine, then that possession is prohibited by this statute, in other words, what I am saying to you, *if one possesses cocaine, and has in mind at the time an intent that cocaine generally shall be distributed,* then his possession is a possession that is prohibited by the statute that I have just read to you. *You need not have the intent to distribute the specific cocaine which he possesses in order to be guilty of this offense.*

(Emphasis added). This instruction amounted to telling the jury that it could find Latham guilty of possession with intent to distribute cocaine even if the defendant did not intend to distribute the cocaine he in fact possessed, but if he had the intent to distribute some unspecified amount of cocaine, that he did not currently possess, at some unspecified time in the future. Such an interpretation of the statute is erroneous. The crucial words of the statute are "possess with intent to distribute a controlled substance." The common sense meaning of this language is that possession and intent to distribute refer to the same controlled substance. The instruction changes the statute to make it read: "possess a controlled substance *and* have a general intent to distribute at some time (the same or a different) controlled substance." This interpretation distorts the clear meaning of the statute. The government cites no case, nor have we been able to find one, in which a defendant was found guilty of possession with intent to distribute where there was no evidence of possession of the drugs that were intended to be distributed.

■ Possession can, of course, be either actual or constructive—constructive possession being defined as exercising dominion, or control over the drug to be distributed. *See, e.g., United States v. Thompson,* 700 F.2d 944, 952 (5th Cir.1983) ("constructive possession may be proved by 'ownership, dominion or control over the contraband itself, or dominion over the premises or the vehicle in which the contraband was concealed' "); *United States v. Batimana,* 623 F.2d 1366, 1369 (9th Cir.1980) ("Constructive possession has been defined as 'dominion and control ... so as to give power of disposal of the drug.' ... Mere proximity to the drug, mere presence, or mere association with the person who does control the drug is insufficient to support a finding of possession."); *United States v. Reese,* 561 F.2d 894, 898 n. 8 (D.C.Cir.1977) ("To prove constructive possession of narcotics, the Government must show that the defendant was in a position or had the right to exercise dominion and control over the contraband.").

We have recognized in a series of cases that possession of a drug can be actual or constructive. *See United States v. Calle–Cardenas,* 837 F.2d 30, 32 (1st Cir.1988) (given that agents found approximately $278,000 worth of cocaine in defendant's refrigerator and cupboards, the jury could infer that the defendant constructively possessed the cocaine because he had dominion and control over the area); *United States v. Alvarez,* 626 F.2d 208, 209, 210 (1st Cir.1980) (discovery of cocaine in a truck that defendant was driving permitted a finding that defendant was asserting control over the material so as to be charged with constructive possession); *United States v. Edwards,* 602 F.2d 458, 470 (1st Cir.1979) (to prove possession of heroin the government must show defendant's actual or constructive possession, and defendant asserted a possessory interest in a package of heroin by carrying it into his own home).

In the instant case, however, there was no evidence that Latham represented to the police that the cocaine he showed them was a sample of a large amount which Latham had stashed away for sale. Bickmore and Lehan testified only that Latham stated that if they wanted to buy four ounces,

they would have to meet later in Portland. Latham did not state that he possessed the four ounces. He might, for example, first have had to purchase the four ounces, and thus the four ounces would not have been in his actual or constructive possession at the time of his arrest. There is nothing in the record to the effect that the police found four ounces of cocaine on Latham's person, in his apartment, in his car, or anyplace else over which he may have had control and dominion. The statute requires that the government prove that Latham possessed, actually or constructively, cocaine that he intended to distribute.

■ There is no question that Latham possessed the one ounce of cocaine which he showed to officers Bickmore and Lehan. The cases that the government cites to support its contention that the display of a drug sample is enough for conviction on the charge of possession with intent to distribute do not in fact support that proposition. In those cases, the drug sample itself was actually distributed. *See United States v. Palafox*, 764 F.2d 558, 560 (9th Cir.1985) (per curiam) (defendant distributed a sample and retained the remainder for the purpose of making an immediate distribution to the same recipient at the same time and at the same place); *United States v. Paone*, 758 F.2d 774, 776 (1st Cir.1985) (a transaction occurred in which a sample of a larger quantity was distributed to the police agent). A third case cited by the government has nothing whatever to do with the display of a drug sample. *United States v. Campbell*, 732 F.2d 1017, 1019–20 (1st Cir.1984) (police found cocaine paraphernalia, including scales, cutting and other equipment, 1000 glassine envelopes, and cocaine residue in the defendant's apartment, and the court held it was reasonable for jury to conclude defendant was conducting an ongoing business). In the instant case, however, Bickmore testified that both Latham and Myrick had specifically said that the one ounce was not for sale, that it was for their (Latham's and Myrick's) own personal use. It is not contended by the government that Latham participated in the distribution of drugs prior to his arrest.

Thus, there is nothing in the record from which it could be found that Latham possessed (actually or constructively) cocaine which he intended to distribute. *See United States v. Jackson*, 588 F.2d 1046, 1056–57 (5th Cir.1979) (as a matter of law, there was insufficient evidence of guilt of possession of heroin with intent to distribute, where government introduced no evidence of defendant's actual or constructive possession of heroin, even though conversations of the defendant made reference to an impending shipment and to a suitcase at the airport). Moreover, it is not clear that Latham had even a general intent to distribute four ounces of cocaine; Sergeant Bickmore testified that "we decided that we were going to arrest Myrick and Latham at that time because *it didn't appear to us ... that they were actually going to go through with a four ounce deal* or we really were not sure who they would be dealing with...." (Emphasis added).

■ Nor do the facts here bring into play the doctrine that possession of large quantities of drugs justifies the inference that the drugs are for distribution and not personal use. *See, e.g., United States v. Espinosa*, 827 F.2d 604, 615 (9th Cir.1987) (possession of 69 pounds of cocaine, absent any evidence that defendant owned only a portion of it, justified an instruction on possession with intent to distribute, but not an instruction on simple possession); *United States v. Mendoza*, 722 F.2d 96, 103 (5th Cir.1983) (possession of 30 pounds of cocaine justified conclusion that possession was for distribution rather than personal consumption); *United States v. Mather*, 465 F.2d 1035, 1038 (5th Cir.1972) (possession of 198 grams of cocaine was sufficient to make out a prima facie case of intent to distribute the cocaine). The opposite result has been reached when only a small amount of the drug is possessed. *See, e.g., Turner v. United States*, 396 U.S. 398, 423, 90 S.Ct. 642, 655–56, 24 L.Ed.2d 610 (1970) (possession of 14 grams of cocaine was not sufficient to conclude defendant was distributing); *United States v. Garcia-Duarte*, 718 F.2d 42, 47–48 (2d Cir.1983) (simple possession instruction was required

when evidence showed that defendant possessed only 0.23 grams of cocaine). In the instant case, the evidence indicates that the defendant possessed only one ounce of cocaine. The government's own witness, David Ford, testified that a heavy user could go through an ounce of cocaine in 1½—2 days. Moreover, the evidence is that Latham and Myrick *jointly* owned the one ounce of cocaine. *See United States v. Massey*, 687 F.2d 1348, 1354 (10th Cir.1982) (constructive possession may be joint among several individuals); *United States v. Davis*, 679 F.2d 845, 853 (11th Cir.1982) (possession may be shared among several conspirators), *cert. denied*, 459 U.S. 1207, 103 S.Ct. 1198, 75 L.Ed.2d 441 (1983). Any instruction, therefore, regarding amounts for personal use, versus distribution, must state that it would be for the personal use of two people, rather than for one. Both the record and the case law counsel that an inference of intent to distribute is not warranted from the possession of one ounce of cocaine.

■ We conclude that the district court's instruction regarding possession with intent to distribute was plain error. It permitted a finding of guilt if the defendant had a general intent to distribute cocaine. The essential elements, however, of the crime of possession with intent to distribute cocaine are: that the defendant possessed cocaine, either actually or constructively, that he did so with a specific intent to distribute the cocaine over which he had actual or constructive possession, and that he did so knowingly and intentionally. Because there is no evidence that Latham actually or constructively possessed cocaine which he intended to distribute, his conviction on the count of possession with intent to distribute must be reversed.

■ The conspiracy count, however, stands on a different footing. "It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses." *Pinkerton v. United States*, 328 U.S. 640, 643, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489 (1946). In order to establish that a conspiracy existed, the evidence must show beyond a reasonable doubt that the members in some way came to a mutual understanding to try to accomplish a common and unlawful plan. *See* E. Devitt and C. Blackmar, *Federal Jury Practice & Instructions* 5 (1977). The essential elements of a conspiracy are that it was willfully formed, that the accused willfully became a member of the conspiracy, that the conspirators thereafter knowingly committed at least one of the overt acts charged in the indictment, and that such overt act was knowingly done in furtherance of some object or purpose of the conspiracy, as charged. *Id.* at 25. *See also United States v. Flaherty*, 668 F.2d 566, 580 (1st Cir.1981) (prosecution must prove intent to agree and intent to commit the substantive offense, as well as an actual agreement); *United States v. Previte*, 648 F.2d 73, 82 (1st Cir.1981) (a conviction for conspiracy cannot be sustained unless the government establishes beyond a reasonable doubt that the defendant had the specific intent to violate the substantive statute). In the instant case, Bickmore testified: that Latham appeared on the scene following Myrick's representations to the officers that Myrick could get them four ounces of cocaine and that he, Myrick, had made arrangements for a person to meet them to show them an ounce sample; that Latham produced a one ounce sample of cocaine at this meeting; and that Latham stated "it was a sample of what he could get us ... (and) the deal would go down in Portland." Based on these actions and statements attributed to Latham, the jury could have found that the defendant participated in a conspiracy with Myrick to possess with intent to distribute four ounces of cocaine. Latham, therefore, can be tried again on the conspiracy count.

## V. OTHER ISSUES

*Electronic Recordings:*

■ The record indicates that Trooper Lehan was wearing a body wire recording device during the meetings attended by Lehan, Sergeant Bickmore, Latham, and Myrick. Bickmore testified for the government at trial that the transmission did not

operate properly because of some malfunction. Lehan also testified at trial concerning the transmission and stated that it "did not go as it should have gone and I don't believe much of anything was overheard." The tape recording was never given to the defense counsel to inspect. Thus, the record does not show whether or not some *portion* of the transactions may have been recorded, even though the entire transaction may not have been. The Supreme Court has made it clear that due process requires that the government reveal material evidence to the defendant. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed. 2d 215 (1963). *See also United States v. Agurs,* 427 U.S. 97, 110, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976) ("[T]here are situations in which evidence is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request.") If the tape does contain any portion of the conversations, it is obviously material, as it could serve to corroborate or invalidate the testimony of the police officers as to what events and conversations actually transpired. The issue of the credibility of the officers is certainly material to the outcome of the trial; their testimony is the essence of the government's case against Latham.

We conclude that it was error for the government not to have provided the defendant with the tape recordings, and order that prior to a new trial, the defendant should be provided with them.

*Credibility of Government's Witness:*

One of the government's key witnesses against Latham was Trooper Lehan. In a previous trial involving a different defendant, *Maine v. Barker,* No. CR–86–425 (York County, Maine, Sup.Ct. March 24, 1987), Lehan had given testimony in which he admitted that in that case and in cases for the past five years, he had routinely falsified investigatory reports regarding the identity of informants. The government in the instant case was apparently aware of this testimony as the defense counsel in the *Barker* case had specifically supplied a copy of the transcript of that testimony to the government. The government in the instant case did not disclose this testimony to the defendant, and Latham's attorney learned of its existence two days after the trial in a newspaper article. The defendant argues that Lehan's practice of falsifying reports bears directly on his credibility and his character for truthfulness, and that pursuant to Fed.R. Evid. 608(b), such evidence would be admissible for cross-examination of Lehan. The government argues that the non-disclosure was harmless because it would not have affected the outcome of the trial. We need not decide if a *Brady* violation occurred, as a new trial is required for other reasons. The possible nondisclosure of material evidence will not be an issue in any future trial, as the defendant is now aware of Lehan's prior testimony.

*Supervised Release:*

█ The district court sentenced Latham to ten years imprisonment, to be followed by five years of supervised release on Count I (conspiracy to possess with intent to distribute cocaine), to be served consecutively with his sentence on the other count (possession with intent to distribute cocaine). The statute governing Count I, 21 U.S.C. § 846, however, does not authorize the imposition of supervised release. *See Bifulco v. United States,* 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). The government agrees with the defendant that this part of the sentence is invalid. If upon retrial the defendant is found guilty on Count I, supervised release cannot be part of his sentence for that count.

## VI. CONCLUSION

We hold that Latham's absence from trial was not voluntary and that he was improperly denied his constitutional right to be present at his trial. He is, therefore, entitled to a new trial. We conclude that the jury instruction regarding possession

with intent to distribute cocaine was plain error, that the electronic recordings made by the officers should be provided to the defense counsel, and that supervised release cannot be part of the sentence for Count I.

Reversed and remanded for a new trial on the charge of conspiracy to possess with intent to distribute cocaine.

SELYA, Circuit Judge (concurring).

I join in Parts II, IV and V of Judge Bownes's opinion and concur in the court's judgment. Yet, I write separately as to one aspect of Part III, because I cannot and do not subscribe to the view that, in ordinary circumstances, a defendant's voluntary ingestion of drugs excuses his absence from trial. I fear that my colleagues overstate the defendant's prerogatives in such a situation, and understate his responsibilities.

Fed.R.Crim.P. 43(b)(1), quoted *ante* note 2, was promulgated specifically "to prevent an accused from defying with impunity the process of th[e] law, ... paralyzing the proceedings of courts and juries ... [and] turning them into a solemn farce." *United States v. Peterson*, 524 F.2d 167, 184 (4th Cir.1975). The defiance which the rule seeks to interdict can be indirect as well as direct: just as one who flees waives the right to be present at trial, one who acts voluntarily in reckless disregard of the requirement that he appear must be held to the same standard of waiver. In either event, there is a deliberate action resulting in a deliberate absence which "indicates nothing less than an intention to obstruct the orderly processes of justice." *United States v. Tortora*, 464 F.2d 1202, 1208 (2d Cir.), *cert. denied*, 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972); *cf. Irons v. F.B.I.*, 811 F.2d 681, 686–87 (1st Cir.1987) (discussing waiver implied by conduct). In the same way that voluntary ingestion of drugs has been held not to render an accused incompetent to stand trial, *e.g., United States v. Newman*, 733 F.2d 1395, 1401 (10th Cir.1984); *Manley v. United States*, 396 F.2d 699, 700 n. 2 (5th Cir.1968), ultroneous drug use should not be available as the linchpin for claims of involuntary absence from trial. When nonattendance results from *controllable* circumstance, waiver should generally follow.[3]

In a nutshell, I agree wholeheartedly with Justice Brennan that "there can be no doubt whatever that the governmental prerogative to proceed with a trial may not be defeated by conduct of the accused that prevents the trial from going forward." *Illinois v. Allen*, 397 U.S. 337, 349, 90 S.Ct. 1057, 1063, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring), *quoted with approval in Taylor v. United States*, 414 U.S. 17, 20, 94 S.Ct. 194, 196, 38 L.Ed.2d 174 (1973) (per curiam). While the court must inquire as to whether defendant's absence from trial was intended or unintended—a defendant's unforeseen allergic reaction to newly prescribed medication, for example, would be involuntary, whereas a purposeful overdose of the same medication would be a deliberate attempt to abuse the judicial process, and voluntary—I, unlike my brethren, tend to think absence arising out of a defendant's volitional midtrial ingestion of drugs likely "voluntar[y]" within the meaning of Fed.R.Crim.P. 43(b)(1).

Notwithstanding the foregoing, I do not doubt that the district court abused its discretion on this occasion. For reasons

**3.** The majority finds it "make[s] no sense" that a defendant would voluntarily ingest enough cocaine to cause his hospitalization in order to avoid or delay his trial. *Ante* at 858. While this may not be the act of a prudent person (after all, "man is an embodied paradox, a bundle of contradictions," Charles Caleb Colton, *Lacon*, Vol. I, No. 408 (1820)), it may have made perfect sense to the defendant. The reported cases show that defendants have attempted a variety of delaying tactics over the years, some potentially life-threatening. *See, e.g., United States v. Barton*, 647 F.2d 224 (2d Cir.) (defendant underwent medically necessary but nonemergency surgery immediately before trial), *cert. denied*, 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981); *United States v. Pastor*, 557 F.2d 930 (2d Cir.1977) (defendant intentionally waited several hours before seeking medical attention for alleged heart attack in order to frustrate trial); *People v. Rogers*, 150 Cal.App.2d 403, 309 P.2d 949 (1957) (defendant either feigned or induced insulin shock in order to delay trial). Without the benefit of an evidentiary hearing, of course, we cannot know the particulars of Latham's case.

which Judge Bownes skillfully details, *ante* at 859–860, the trial judge was too quick on the trigger. From aught that appears, the prosecution would have suffered no cognizable harm had the court taken a reasonable amount of time—say, one day—in attempting to pinpoint the defendant's whereabouts. And on the facts of this case, the failure to grant Latham an evidentiary hearing to explain his absence was clearly erroneous. For these reasons—and not because I am willing to assume that a defendant's absence from his trial because he purposely ingested drugs is likely to be considered "involuntary"—I agree that a new trial is appropriate on the conspiracy count. Accordingly, I concur in the judgment of the court.