**Electronically Filed
Supreme Court
SCWC-12-0000115
29-JUN-2015
03:28 PM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

STATE OF HAWAI'I, Respondent/Plaintiff-Appellee,

vs.

JOSEPH VAIMILI, Petitioner/Defendant-Appellant.
_____

SCWC-12-0000115

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-12-0000115; CR. NO. 09-1-0410)

JUNE 29, 2015

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I. Introduction

This case arises from Petitioner/Defendant-Appellant
Joseph Vaimili's ("Vaimili['s]") convictions for sex trafficking
related crimes based on his conduct as a pimp for the

complaining witness ("CW") who came to Hawai'i to work as a prostitute during the 2009 Pro Bowl.

In brief summary, at his trial, Vaimili was present for voir dire and jury selection; however, he failed to appear in court two days later despite being instructed to do so. The trial was continued two times over the course of one month, first for five days, at which time the circuit court found that Vaimili had voluntarily absented himself from the proceedings, and again for twenty-one days, after which the circuit court conducted trial in absentia.

Vaimili challenges the State's pleading of the charges against him in the disjunctive and the circuit court's conducting trial in absentia, presenting four issues on certiorari:

1. Whether the ICA [Intermediate Court of Appeals] gravely erred in holding that the charges against Vaimili were not defective where they were phrased in the disjunctive?
2. Whether the ICA gravely erred in holding that Vaimili's counsel was not ineffective for failing to challenge the charges as defective where they were phrased in the disjunctive?
3. Whether the ICA gravely erred in holding that the proceedings in this case "commenced" for purposes of HRPP [Hawai'i Rules of Penal Procedure] Rule 43 when the process of jury selection begins?
4. Whether the ICA gravely erred in holding that the circuit court did not violate Vaimili's constitutional right to be present where it proceeded to trial in his absence?

Questions 1, 2, and 4 were raised as points of error before the ICA. Question 3 concerns an issue of first impression in this

2

jurisdiction regarding the ICA's holding that "trial commences"
for purposes of HRPP Rule 43 when jury selection begins.

## II.  Background

### A.  Circuit Court Proceedings[1]

On October 13, 2009, Vaimili was charged by amended
complaint with two counts of Kidnapping, one count of
Terroristic Threatening in the First Degree, one count of
Promoting Prostitution in the First Degree, and one count of
Carrying or Use of a Firearm in the Commission of a Separate
Felony.  The amended complaint read in relevant part as follows:

> COUNT I: On or about the 4th day of March, 2009, to
> and including the 5th day of March 2009, in the City and
> County of Honolulu, State of Hawaii, JOSEPH
> VAIMILI did intentionally or knowingly restrain [the Complaining
> Witness ("CW")], with intent to terrorize her or a third
> person, thereby committing the offense of Kidnapping, in
> violation of Section 707-720(1)(e) of the [HRS].[2]
>
> . . . .
>
> COUNT II: On or about the 21st day of February, 2009,
> in the City and County of Honolulu, State of Hawaii, JOSEPH
> VAIMILI did intentionally or knowingly restrain [the CW],
> with intent to inflict bodily injury upon her or subject
> her to a sexual offense, thereby committing the offense of
> Kidnapping, in violation of Section 707-720(1)(d) of the
> [HRS].[3]
>
> . . . .
>
> COUNT III: On or about the 4th day of March, 2009, to
> and including the 5th day of March, 2009, in the City and

---

[1]     The Honorable Randal K.O. Lee presided.

[2]     See HRS § 707-720(1) (Supp. 2008) ("A person commits the offense
of kidnapping if the person intentionally or knowingly restrains another
person with intent to . . . [i]nflict bodily injury upon that person or
subject that person to a sexual offense; [or] [t]errorize that person or a
third person . . . .").

[3]     See supra note 2.

County of Honolulu, State of Hawaii, JOSEPH VAIMILI, threatened, by word or conduct, to cause bodily injury to [the CW], with the use of a dangerous instrument, to wit, an instrument that falls within the scope of Section 706-660.1 of the [HRS], with the intent to terrorize, or in reckless disregard of the risk of terrorizing [the CW], thereby committing the offense of Terroristic Threatening in the First Degree, in violation of Section 707-716(1)(e) of the [HRS].[4]

. . . .

COUNT IV: On or about the 18th day of February, 2009, to and including the 3rd day of March, 2009, in the City and County of Honolulu, State of Hawaii, JOSEPH VAIMILI did knowingly advance prostitution by compelling [the CW] by force, threat, or intimidation to engage in prostitution, or did knowingly profit from such coercive conduct by another, thereby committing the offense of Promoting Prostitution in the First Degree, in violation of Section 712-1202(1)(a) of the [HRS].[5]

. . . .

COUNT V: On or about the 4th day of March, 2009, to and including the 5th day of March, 2009, in the City and County of Honolulu, State of Hawaii, JOSEPH VAIMILI did knowingly carry on his person or have within his immediate control or did intentionally use or threaten to use a firearm while engaged in the commission of a separate felony, to wit, Kidnapping and/or any included felony offense of Kidnapping, whether the firearm was loaded or not, and whether operable or not, thereby committing the offense of Carrying or Use of a Firearm in the Commission of a Separate Felony, in violation of Section 134-21 of the Hawaii Revised Statutes.[6] JOSEPH VAIMILI commits the

---

[4] See HRS § 707-716(1)(e) (Supp. 2007) ("A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening . . . [w]ith the use of a dangerous instrument."). "Terroristic threatening" is defined in HRS § 707-715 (1993) ("A person commits the offense of terroristic threatening if the person threatens, by word or conduct, to cause bodily injury to another person . . . [w]ith the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person.").

[5] See HRS § 712-1202(1)(a) (Supp. 2008) ("A person commits the offense of promoting prostitution in the first degree if the person knowingly . . . [a]dvances prostitution by compelling a person by force, threat, or intimidation to engage in prostitution, or profits from such coercive conduct by another . . . .").

[6] See HRS § 134-21 (Supp. 2006) ("It shall be unlawful for a person to knowingly carry on the person or have within the person's immediate control or intentionally use or threaten to use a firearm while engaged in the commission of a separate felony, whether the firearm was loaded or not, and whether operable or not . . . .").

4

offense of Kidnapping, in violation of Section 707–720(1)(e) of the [HRS], if he intentionally or knowingly restrain [sic] [the CW] with intent to terrorize her or a third person.

Jeffrey T. Arakaki ("Arakaki" or "trial counsel") was appointed to represent Vaimili.

On April 6, 2010, during a hearing on certain pretrial motions, trial counsel requested that Vaimili's presence be waived. The State informed the circuit court that it had information that Vaimili had left Hawai'i, and that the bail bond company had gone to San Francisco to try to locate him. The State also explained that Vaimili's bail was set for $250,000 because of the high risk of his leaving the state. The circuit court ordered a trial call for the following week and required Vaimili to be present in court.

On April 13, 2010, Vaimili was present in court for the trial call. Ida Peppers ("Peppers"), who stated that she was a representative of the bail bond company and also Vaimili's employer in a restaurant, reported to the circuit court that she and Linda Del Rio ("Del Rio"), an employee of the bail bond company, were in California looking for another person, not Vaimili. Vaimili denied that he had traveled to the mainland while on bail, instead asserting that he had been at work. The circuit court clarified with Vaimili that he "cannot leave this island without this Court's permission[,]" and continued the

trial call to the following week to permit additional witnesses to be called on the issue of whether Vaimili had left Hawai'i.

At the hearing on April 22, 2010, a district court clerk ("court clerk") testified that on April 1st, Del Rio informed the clerk that Vaimili had forfeited his $250,000 bail, and that she was going to travel to San Francisco to bring him back.  The court clerk, however, did not know whether Vaimili had actually left the jurisdiction.  Del Rio testified that "Vaimili never left the State of Hawai'i[,]" and that she went to San Francisco to search for two other people.  The circuit court concluded that the evidence presented was insufficient to prove an intentional violation of the conditions of bail by Vaimili. The circuit court found that "Del Rio's credibility is an issue[,]" and that the court clerk was more credible.  The circuit court modified Vaimili's bail conditions, subjecting Vaimili to electronic monitoring and imposing a curfew.

On June 15, 2010, Vaimili apparently failed to appear on time for morning proceedings, for which the circuit court issued the following reprimand:

> Mr. Vaimili, you were supposed to be here this morning.  And I know your attorney told you you didn't have to, [sic] but at the last hearing I made it clear all parties be here.  Henceforth, whenever you have to come to this courtroom, you have to come -- you have to be here, regardless of what somebody else tells you just be here. And be here on time because if you're not on time, I'm going to take you into custody.

On Monday, June 21, 2010, Vaimili was present for jury selection and voir dire, which began and was completed that day. After the jury was selected, the circuit court informed the jurors, in Vaimili's presence, that trial would resume on Wednesday at 9:00 a.m., instructed the jurors to arrive at 8:45 a.m., and informed the jurors that he would swear them in on Wednesday before proceeding with opening statements and evidence.

On Wednesday, June 23, 2010, Vaimili failed to appear. Trial counsel represented that he had spoken to Vaimili the day before because they planned to meet, but that Vaimili failed to show up for their meeting and thereafter did not respond to any of his contacts. Trial counsel explained that when he attempted to contact Vaimili by phone, Vaimili's phone number "indicated that he would not take any calls at that point in time."[7]

At that point, the circuit court asked counsel how the case should proceed in light of Vaimili's absence, explaining that trial in absentia could proceed because "Vaimili voluntarily absented himself from the trial[,]" or he "could also discharge the jury[,]" which had not been sworn in yet. Trial counsel preferred to have Vaimili present and requested a continuance until Vaimili either "show[ed] up" or was "picked

---

[7] Trial counsel explained to the court: "I made some calls and the calls were just when I call his phone number the phone number just indicated that he would not take any calls at that point in time."

up[.]"  The circuit court issued a bench warrant, ordered forfeiture of Vaimili's bond, and continued trial for five days to the following Monday, June 28, 2010.

On June 28, 2010, the State filed a "Memorandum on Trial In Absentia[,]" asserting, inter alia, that:  (1) Vaimili was present in court when trial commenced with jury selection; (2) Vaimili was present in court when the State confirmed that the CW was on O'ahu and prepared to testify at trial; (3) Vaimili did not return to court thereafter, and thus, voluntarily absented himself from the proceedings; and (4) the public's interest in going forward with the trial outweighed Vaimili's right to be present.  The State further represented that (1) on June 15, 2010, Vaimili notified the Intake Service Center ("ISC") that the telephone to which his electronic monitor was attached had been disconnected, and that the ISC had not heard from him since June 17, 2010 despite his having an appointment with ISC the week of June 21, 2010; (2) since Vaimili's non-appearance in court on June 23, 2010, police officers and sheriffs had been actively looking for Vaimili on O'ahu at places he was known to frequent, but had been unable to find him; (3) on June 23, 2010, Vaimili had reportedly been at the Honolulu International Airport preparing to board a flight to San Francisco; and (4) because Vaimili had absconded, the CW, who

had been brought from the mainland to Hawai'i to testify at trial, was "obligated to remain on the Island of Oahu for an additional week at significant expense, inconvenience and emotional distress to the [CW], who fear[ed] [that Vaimili] and his friends w[ould] attempt to keep her from testifying against him."

Trial counsel then informed the circuit court that he had not had any contact with Vaimili, and that Del Rio told him that morning that they had not located him. The circuit court noted that "it received several phone calls from Ms. Del Rio indicating that she was at the airport anticipating that Mr. Vaimili was -- maybe leaving the jurisdiction and that she was soliciting the assistance of law enforcement authorities to assist her in locating and apprehending [him]." The circuit court therefore found that under HRPP Rule 43, "Vaimili [had] voluntarily and intelligently absent[ed] himself from the proceedings."

The circuit court called in the jury, advised them that the trial would be continued to July 19, 2010, and asked if anyone would be unavailable. The circuit court excused a juror who stated that she was going back to the mainland on July 15th, and replaced her with the first alternate. The circuit court then asked the jurors whether they had heard anything about the case outside of the courtroom, questioned two jurors who

answered affirmatively, outside of the presence of the other jurors, and permitted trial counsel and the State an opportunity to question them. The two jurors stated that what they had been told would not impact their ability to be fair and impartial, and the circuit court kept the two jurors on the jury. The circuit court then addressed the entire jury and instructed them to return on July 19th.

The circuit court also denied Vaimili's motion to dismiss his charges for alleged discovery violations, and Natasha Cambra ("Cambra"), a co-defendant whose case had been consolidated with Vaimili's case for trial, pled guilty to unlawful imprisonment pursuant to a plea agreement.

Vaimili had not been located by July 19, 2010. Trial counsel objected to trial in absentia, arguing that "the public interest in continuing this trial does not in fact supersede [Vaimili's] right to be present, [nor] his right to confront . . . his accusers[,]" and that the State had not shown that Vaimili was voluntarily absent. Trial counsel also informed the court that he had last spoken to Vaimili on June 22, the day after jury selection, and that they had scheduled to meet. Trial counsel further stated that he attempted to contact Vaimili "a number of times[]" through a phone number provided by Vaimili, including an attempt made as recently as one or two weeks previously, but that he did not respond to any of those calls.

Trial counsel also stated that Peppers confirmed with him that the number he was using to reach Vaimili was "not a number that he can be reached at[,]" and that Peppers was "presently on the mainland looking for Mr. Vaimili."

Citing HRPP Rule 43, the circuit court ruled in relevant part as follows:

> [T]he defendant shall be considered to have waived the right to be present whenever a defendant initially present is voluntarily absent after the hearing or trial is commenced. In this particular case, Mr. Vaimili was informed that the —- after jury selection that the trial will commence at 9:00 on the 23rd. Mr. Vaimili was instructed to be here I believe at 8:30. He had been previously admonished by this court that irregardless [sic] of what anybody might tell him that he is required to be present at all proceedings and that's why the court even imposed conditions on Mr. Vaimili short of revoking his bail.
> As counsel recall there was a motion to revoke Mr. Vaimili's bail because of allegations that Mr. Vaimili had left the jurisdiction to the State of California, and the witness that would bear fruit to that was Ms. Del Rio. However, at the hearing Ms. Del Rio had indicated that that was not correct, and therefore the court had no basis to grant the motion. However, given the seriousness of the offense, the court nevertheless imposed the conditions that it did on Mr. Vaimili only later be [sic] confronted on June 23rd of Mr. Vaimili's failure to appear. The court even continued the matter to allow [trial counsel] or Ms. Del Rio to find Mr. Vaimili. And to this date, Mr. Vaimili has yet to appear before this court. Therefore, the court, under Rule 43 of the Hawaii Rules of Penal Procedure, will proceed without Mr. Vaimili's presence.

The circuit court then proceeded to swear in the jury, and instructed the jury that Vaimili had "voluntarily elected not to be present at trial[,]" and that the jury shall not use or consider Vaimili's absence to determine his guilt or

11

innocence of the charges and shall not use Vaimili's absence "as evidence that [he] is a person of bad character."[8]

On July 22, 2010, the jury found Vaimili guilty as charged on all five counts.

On or about October 14, 2011, Vaimili was arrested in Texas and returned to Hawai'i for sentencing.

On February 21, 2012, Vaimili appeared before the circuit court for sentencing.  The circuit court imposed mandatory minimum terms of incarceration based on Vaimili's status as a repeat offender, sentencing him to forty years of imprisonment as follows:  ten years on counts 1 and 2, and five years on count 3 to run concurrently, ten years on count 4 to run consecutively to the sentences on counts 1 through 3, and 20 years on count 5 to run consecutively to the sentences on counts 1 through 4.

On February 24, 2012, Vaimili appealed the Judgment to the ICA.

---

[8]     Relevant to the State's charging Vaimili with alternative acts, the circuit court also instructed the jury as follows:

> The law allows the introduction of evidence for the purpose of showing that there is more than one act upon which proof of an element of an offense may be based.  In order for the prosecution to prove an element, all twelve jurors must unanimously agree that the same act has been proved beyond a reasonable doubt.

On April 12, 2012, Arakaki filed a motion to withdraw as counsel, which the ICA granted. Thereafter, Jeffrey A. Hawk was appointed counsel for Vaimili, effective June 4, 2012.

**B.  Appeal to the ICA**

On appeal to the ICA, Vaimili argued that his conviction should be vacated because: (1) the charges against him were fatally defective due to the State's charging him in the disjunctive, which allegedly failed to provide him with adequate notice of the alleged offenses; (2) his trial counsel provided ineffective assistance by failing to raise the charging issue; and (3) the circuit court deprived Vaimili of his constitutional right to be present at trial by holding trial in his absence after he failed to appear.

The ICA affirmed the circuit court's Judgment in a published Opinion, stating its holdings as follows:

> (1) consistent with . . . State v. Codiamat, 131 Hawai'i 220, 317 P.3d 664 (2013), the State's charging Vaimili in the disjunctive did not render his charges defective under Codiamat; (2) Vaimili's trial counsel's failure to raise the charging issue did not constitute ineffective assistance of counsel; and (3) the Circuit Court acted within its discretion, and did not violate Vaimili's right to be present at trial, when it only proceeded with the trial after it became apparent that Vaimili was voluntarily absent, that he could not be located, and that it was unlikely he would soon return.

With respect to the disjunctive charges, the ICA also stated in Part I.D. of its discussion:

> We conclude that the charges against Vaimili gave him fair notice of the nature and cause of the accusation against him and what he needed to be prepared to meet. It is well-settled that where an offense statute establishes

13

alternative means of committing an offense, the State is allowed to prove in the disjunctive, that is, prove the offense was committed by establishing any of the alternative means.

If the State can prove alternative means in the disjunctive, then charging alternative means in the disjunctive serves to provide a defendant with fair notice. Put another way, disjunctive charging provides a defendant with fair notice because it accurately reflects what the defendant must be prepared to meet, and thus, satisfies due process. . . .

In this case, the State's disjunctive charging served to provide Vaimili with fair notice that the State could prove the charges against him through proof of alternative acts or states of mind. . . . We conclude that Vaimili has failed to show that his charges were rendered fatally defective by the State's charging in the disjunctive.

(citations omitted).

### III. Standards of Review

### A. Sufficiency of Charges

"[W]hether a complaint provides sufficient notice to a defendant is reviewed under the de novo, or right/wrong, standard." State v. Codiamat, 131 Hawai'i 220, 223, 317 P.3d 664, 667 (2013).

### B. Ineffective Assistance of Counsel

When reviewing a claim of ineffective assistance of counsel, [the appellate court] looks at whether defense counsel's assistance was within the range of competence demanded of attorneys in criminal cases. The defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. To satisfy this second prong, the defendant needs to show a possible impairment, rather than a probable impairment, of a potentially meritorious defense. A defendant need not prove actual prejudice.

State v. Wakisaka, 102 Hawai'i 504, 513-14, 78 P.3d 317, 326-27 (2003) (internal quotation marks, citations, and footnote

14

omitted).

## C.  Defendant's Constitutional Right to be Present

"We answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case.  Thus, we review questions of constitutional law under the right/wrong standard."  State v. Pratt, 127 Hawai'i 206, 212, 277 P.3d 300, 306 (2012) (citations and internal quotation marks omitted).

## D.  Interpretation of a Court Rule

Principles of statutory construction apply to interpreting a rule promulgated by the courts.  The interpretation of a court rule is thus a question of law reviewable de novo.  See State v. Baron, 80 Hawai'i 107, 113, 905 P.2d 613, 619 (1995).

## IV. Discussion

## A.  Disjunctive Charging Language

In Codiamat, 131 Hawai'i 220, 317 P.3d 664, this court recognized that "states of mind may be charged disjunctively," and "acts may be charged disjunctively when the words used charge similar or analogous forms of conduct that are codified in a single subsection of a statute."  131 Hawai'i at 227, 317 P.3d at 671 (citing State v. Batson, 73 Haw. 236, 248, 831 P.2d 924, 931 (1992); State v. Jendrusch, 58 Haw. 279, 280, 567 P.2d

15

1242, 1243 (1977); State v. Nesmith, 127 Hawai'i 48, 51, 276 P.3d 617, 620 (2012)).  Here, the ICA "conclude[d] that the charges against Vaimili gave him fair notice of the nature and cause of the accusation against him and what he needed to be prepared to meet" because the State was permitted to "prove the charges against him through proof of alternative acts or states of mind."

Although initially, the ICA accurately quoted our holding in Codiamat, the ICA's subsequent language in Part I.D. of its discussion, partially quoted in Part II.B., supra, is overly expansive and may suggest an extension of our holding in Codiamat.  We therefore expressly reiterate that our conclusion is limited to the following: "when charging a defendant under a single subsection of a statute, the charge may be worded disjunctively in the language of the statute as long as the acts charged are reasonably related so that the charge provides sufficient notice to the defendant."  Codiamat, 131 Hawai'i at 227, 317 P.3d at 671 (footnote omitted).  Here, Vaimili was charged by amended complaint.  See supra Part II.A.  A review of the actions alleged in each count reveals that the charges were worded disjunctively in the language of a single subsection of each respective statute.

Nevertheless, Vaimili asserts that the charges for each count gave him insufficient notice of the specific acts with

16

which he was charged.  In brief, for each count charged, he identifies four possible acts that could support a conviction of the charge, and states that the four acts were "distinct and separate acts that [he] had to prepare to defend."  For example, with respect to Count I, Vaimili asserts:

> [T]here were four distinct acts that could have supported Vaimili's conviction: 1) intentionally restraining [the CW] with intent to terrorize her; 2) knowingly restraining [the CW] with intent to terrorize her; 3) intentionally restraining [the CW] with intent to terrorize an unspecified third person; or 4) knowingly restraining [the CW] with intent to terrorize an unspecified third person.

Vaimili's assertion is without merit.  The State's charging of multiple "distinct and separate" acts using disjunctive language is permissible as long as use of the disjunctive is confined to address "similar or analogous forms of conduct" contained in a single subsection of a statute; in this way, the alleged acts are reasonably related, and each of those separate acts can be ascertained.  Codiamat, 131 Hawai'i at 227, 317 P.3d at 671.

Here, determination of the content and number of disparate acts alleged is not an issue, as Vaimili readily identifies each of them.  Further, Vaimili's assertions that the disparate acts alleged by the State within each count are not reasonably related to provide Vaimili with requisite notice, are unpersuasive.  Vaimili points only to the kidnapping charge in Count I to illustrate why he was not given sufficient notice.

17

That is, Vaimili suggests that Count I did not provide him sufficient notice because the amended complaint did not allege the identity of the possible "third person." Yet, the absence of the identity of the "third person" in the amended complaint, which could have been rectified by a motion for a bill of particulars, see HRS § 806-47 (1993), bears not on whether the State's use of the disjunctive failed to give Vaimili adequate notice of the "nature and cause of the accusation," Haw. Const. art. I, § 14; that is, whether "the acts charged are reasonably related."

Vaimili provides no other reasons to support a conclusion that the acts charged within each count are not reasonably related. The charges met due process requirements as they provided fair notice and were worded "'in a manner such that the nature and cause of the accusation could be understood by a person of common understanding.'" Codiamat, 131 Hawai'i at 223, 317 P.3d at 667 (quoting State v. Sprattling, 99 Hawai'i 312, 318, 55 P.3d 276, 282 (2002)).

As previously noted, each count of the charges against Vaimili was worded disjunctively in the language of a single subsection of a statute, alleging conduct that was reasonably related. We conclude the amended complaint provided sufficient notice to Vaimili and was not defective. See Codiamat, 131

Hawai'i at 227, 317 P.3d at 671.  Further, as no potentially meritorious defense was implicated, trial counsel did not provide ineffective assistance for failing to object to the disjunctive charging language.  See Wakisaka, 102 Hawai'i at 513-14, 78 P.3d at 326-27.

**B.   Trial in Absentia**

"[A] [d]efendant's right to be present at all stages of his [or her] trial is of fundamental importance and is derived from the confrontation clause of the Fifth Amendment to the United States Constitution and made applicable to the states by the due process clause of the Fourteenth Amendment."  State v. Caraballo, 62 Haw. 309, 320, 615 P.2d 91, 99 (1980) (citing Pointer v. Texas, 380 U.S. 400 (1965)).  Trial may continue, however, in certain circumstances when a defendant is voluntarily absent.

Rule 43 of the Hawai'i Rules of Penal Procedure ("HRPP") codifies a defendant's constitutional right to be present at trial, as well as exceptions to the defendant's continued presence.  See Caraballo, 62 Haw. at 320, 615 P.2d at 99 (referring to the Hawai'i Rules of Criminal Procedure ("HRCP"), the predecessor to the HRPP).  The Rule states in relevant part:

> (a) Presence required. The defendant shall be present at the arraignment, at the time of the plea, at evidentiary pretrial hearings, at every stage of the trial including

> the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.
>
> (b) Continued presence not required. The further progress of a pretrial evidentiary hearing or of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present,
>    (1) is voluntarily absent after the hearing or trial has commenced (whether or not the defendant has been informed by the court of the obligation to remain during the trial); or
>    (2) engages in conduct which is such as to justify exclusion from the courtroom.

HRPP Rule 43.

By proceeding with trial despite his absence, Vaimili argues the trial court violated this court rule, and in so doing, violated his rights under the United States and Hawai‘i Constitutions.  Specifically, Vaimili contends (1) the State failed to show his absence from trial was voluntary; (2) that trial does not "commence" until after the empaneled jury is administered its oath, and as such, Rule 43(b)'s exception to the defendant's constitutional right to be present does not apply to his case as the selected jury had not been administered its oath prior to his absence from court; and (3) his absence through the trial was "not harmless beyond a reasonable doubt."

For the following reasons, Vaimili's arguments are unpersuasive.

1. **Vaimili's Absence Was Voluntary.**

Vaimili was present in court on June 21, 2010 when the jury was selected and the parties and jurors were instructed to

return two days later.  Vaimili, who was released on bail, failed to return when trial resumed on June 23, 2010.  Trial counsel could not explain Vaimili's absence, representing that he had spoken with Vaimili on June 22 because they planned to later meet, but that Vaimili failed to show and thereafter did not return any of trial counsel's phone calls.  After issuing a bench warrant and ordering the forfeiture of Vaimili's bond, the circuit court continued the trial for five days.  On June 28, 2010, Vaimili's whereabouts were still unknown — trial counsel informed the circuit court that Vaimili still had not contacted him and that the bail bond company had not been able to locate Vaimili.  The circuit court also noted that it received several phone calls from a bail bond company employee indicating she was seeking assistance from law enforcement authorities to help locate and apprehend Vaimili.

The court continued proceedings for another twenty-one days to July 19, 2010.  On that date, Vaimili remained absent, and defense counsel argued that trial should not proceed without Vaimili as the State "ha[d] not met its burden to show that [Vaimili] [wa]s voluntary[ily] absent."  Specifically, defense counsel suggested, "[f]or all we know, your Honor, [Vaimili] may have been hurt or . . . deceased."  Through the court's colloquy with defense counsel, it was established that defense counsel's last successful contact with Vaimili was on June 22, which was

the day after jury selection. Further, all of defense counsel's subsequent attempts to contact Vaimili by phone at a number provided by Vaimili — including the most recent efforts one to two weeks before July 19 — were unsuccessful. Defense counsel also stated that the head of the company that posted bail for Vaimili informed him that she could not reach Vaimili at that same provided number, and that she was searching for Vaimili on the mainland. Thus, for almost a month, Vaimili had no contact with his attorney or bail bond person, the minimum two individuals he should have had contact with given that he was released on bail and was last informed that trial was to resume on June 23, 2010. Moreover, these events unfolded after (1) the court previously received testimony in April 2010 by the court clerk that Del Rio had informed her that Vaimili had forfeited bail and would need to be retrieved from San Francisco, and (2) Vaimili failed to appear on time for proceedings the morning of June 15, 2010.

Based on the foregoing, we conclude the ICA, when conducting its de novo review, did not err in "conclud[ing] that there was sufficient evidence to show that Vaimili was voluntarily absent." The trial court had issued a bench warrant to secure Vaimili's return, yet local authorities were unable to locate him. The trial court also provided a significant amount of time for Vaimili to reappear and contact his attorney or bail

bond person, which he did not do.  Moreover, the telephone number provided by Vaimili, when dialed, indicated that Vaimili "would not take any calls at that point in time," see supra note 7, which does not support defense counsel's position that Vaimili may have been injured or deceased.  As the ICA noted, "[a]lthough the . . . [c]ourt did not know the precise reason for Vaimili's failure to appear, the record provides compelling evidence that Vaimili had absconded" and therefore was voluntarily absent.

**2.    For the Purposes of HRPP Rule 43, Trial "Commences" before the Selected Jury Is Sworn.**

HRPP Rule 43 is the successor to HRCP Rule 43, which in turn was modeled on Rule 43 of the Federal Rules of Criminal Procedure ("FRCP").  See Caraballo, 62 Haw. at 322 n.12, 615 P.2d at 99 n.12; Matias v. State, 73 Haw. 147, 149, 828 P.2d 281, 283 (1992).  HRPP Rule 43 states in relevant part: "The further progress . . . of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present, . . . is voluntarily absent after the . . . trial has commenced[.]"  HRPP Rule 43(b)(1).  This portion of HRPP Rule 43 is substantially similar to the version of FRCP Rule 43 after which HRCP Rule 43 was patterned.  Compare HRPP Rule 43(b)(1), with FRCP 43(b)(1) (1975 and 1995

23

amendments) ("The further progress of the trial . . . will not be prevented and the defendant will be considered to have waived the right to be present whenever a defendant, initially present at trial . . . is voluntarily absent after the trial has commenced.").  Since 1995, FRCP 43 has not changed substantively; only stylistic edits were made in 2002 to promote clarity and consistency.  See FRCP 43(c)(1)(A) ("A defendant who was initially present at trial . . . waives the right to be present . . . when the defendant is voluntarily absent after the trial has begun . . . .").  See State v. Okumura, 58 Haw. 425, 570 P.2d 848 (1977).

As with the federal rule after which it was modeled, HRPP Rule 43 "refers not to the commencement of jeopardy but to the commencement of trial."  United States v. Miller, 463 F.2d 600, 603 (1st Cir. 1972).  Thus, although jeopardy attaches after an empaneled jury is sworn, see State v. Quitog, 85 Hawai'i 128, 141, 938 P.2d 559, 572 (1997), that does not mean an empaneled jury must be sworn before trial "commences" for the purposes of HRPP Rule 43.

Rather, federal courts have consistently held that for purposes of FRCP Rule 43, trial "has begun" or "commenced" when jury selection begins, not when the selected jury is sworn in.  See, e.g., Miller, 463 F.2d at 603 ("With regard to a defendant's presence at trial, the trial commences 'at least'

from the time that the work of impaneling jurors begins." (quoting Hopt v. Utah, 110 U.S. 574, 578 (1884)); United States v. Bradford, 237 F.3d 1306, 1309 (11th Cir. 2001) (citing United States v. Krout, 56 F.3d 643 (5th Cir. 1995); United States v. Camacho, 955 F.2d 950 (4th Cir. 1992); Government of the Virgin Islands v. George, 680 F.2d 13 (3d Cir. 1982); Miller, 463 F.2d 600); United States v. Benabe, 654 F.3d 753 (7th Cir. 2011). Indeed, "[a] felony defendant has a right to be present at jury selection because the trial begins no later than voir dire." Cuoco v. United States, 208 F.3d 27, 32 (2d Cir. 2000) (emphasis in original).  These federal cases are persuasive given HRPP Rule 43's origins in FRCP Rule 43.  Moreover, the plain text of HRPP Rule 43 supports the conclusion that jury selection is not a proceeding separate from trial.  See HRPP Rule 43(a) ("The defendant shall be present . . . at every stage of the trial including the impaneling of the jury . . . .") (emphasis added); State v. Rauch, 94 Hawaiʻi 315, 322, 13 P.3d 324, 331 (2000) (stating that statutory construction begins with "language contained in the statute itself").

As such, we agree with the foregoing line of federal cases interpreting FRCP Rule 43, and hold that for the purposes of HRPP Rule 43, trial "commences" when prospective jurors are administered an oath prior to voir dire, at any authorized location for court proceedings.

### 3. The Okumura Balancing Test Applies to Voluntarily Absent Defendants Such as Vaimili.

We further clarify that when a defendant has not expressly requested — and been granted — permission to leave an on-going trial,[9] but is otherwise voluntarily absent, the trial court must still engage in the balancing test outlined in Okumura, 58 Haw. 425, 570 P.2d 848, before determining whether to proceed with the trial:  "[T]he narrow discretion given to the trial judge to proceed with the trial should be exercised only when the public interest clearly outweighs that of the absent defendant."  (quoting United States v. Tortora, 464 F.2d 1202, 1210 (2d Cir.), cert. denied sub nom. Santoro v. United States, 409 U.S. 1063 (1972)).  Thus, a defendant's right to confront his accusers is balanced against factors such as (1) "the time and expense caused by [a] defendant's efforts to defeat the proceedings by his departure or flight," Okumura, 58 Haw. at 430, 570 P.2d at 852 (citation and quotation marks omitted); (2) "the likelihood that the trial could soon take place with the defendant present," United States v. Benavides,

---

[9]     Our ruling in Caraballo, 62 Haw. 309, 615 P.2d 91, is not disturbed.  In that case, the defendant, through counsel, twice requested and was granted, permission to leave the trial while it continued to proceed. See Caraballo, 62 Haw. at 321 n.11, 615 P.2d at 99 n.11.  The first instance was prior to the empaneling of the jury, and the second instance was during the testimony of a witness.  See Caraballo, 62 Haw. at 320 & nn.8, 9, 615 P.2d at 98 nn.8, 9.  In these circumstances, we held that the defendant's requested, voluntary absence from trial, with no record that the defendant also requested that trial be continued until his return, "operates as a waiver of his right to be present and the trial may continue as if he were present."  Caraballo, 62 Haw. at 323, 615 P.2d at 100.

26

596 F.2d 137, 139 (5th Cir. 1979); (3) "the difficulty of rescheduling," Tortora, 464 F.2d at 1210; (4) the "inconvenience to jurors," Benavides, 596 F.2d at 140; and (5) harm to the State's case, Okumura, 58 Haw. at 430, 570 P.2d at 852.

Here, Vaimili was present at the start of trial, when a jury and alternate jurors were selected. Despite Vaimili's absence when trial resumed on June 23, 2010 and was later continued to June 28, 2010, the court did not hastily proceed with trial, but instead continued proceedings again for an extra twenty-one days due to Vaimili's disappearance. Cf. Benavides, 596 F.2d at 140 (concluding the trial court abused its discretion when it proceeded with trial after providing only a one-day continuance for defense counsel to locate his clients). Yet, even with the extension of time, no indication was given as to when Vaimili would return. Vaimili did not contact anyone related to the case, his attorney and bail bond person could not reach him, and authorities could not locate Vaimili after a bench warrant issued. Thus any further delay to proceedings in order to await Vaimili's return was foreseeably indefinite, as there was "no reasonable probability he could be located shortly." United States v. Beltran-Nunez, 716 F.2d 287, 291 (5th Cir. 1983).

Based on these circumstances, the public interest clearly outweighed Vaimili's interest. The purpose of HRPP

27

43(b)(1) is to prevent a defendant from "defeat[ing] the proceedings by voluntarily absenting himself after the trial has been commenced in his presence." FRCP 43 advisory committee's note (1944 adoption). Vaimili's disappearance for nearly a month stymied all reasonable efforts by the court to permit him to be present at the remainder of his trial. The delay caused by Vaimili's absence and lack of contact had already required the replacement of one juror, with an indefinite delay potentially requiring the dismissal of additional jurors, thereby wasting the time and expense already spent for trial.

Accordingly, the circuit court did not violate Vaimili's right to be present at trial. The ICA did not err in concluding that the circuit court appropriately exercised its discretion in proceeding with the trial without Vaimili.

### V. Conclusion

For the foregoing reasons, we affirm the December 24, 2014 Judgment of the Intermediate Court of Appeals, which affirmed the Circuit Court of the First Circuit's February 21, 2012 Judgment of Conviction and Sentence.

Jeffrey A. Hawk,
for petitioner

James M. Anderson,
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson



28