**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000010
30-MAY-2025
07:56 AM
Dkt. 108 SO**

NO. CAAP-24-0000010


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
LUAVALU SAGAPOLUTELE, Defendant-Appellant,
and DANE T. MIZUSAWA, Defendant-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CPC-22-0000399)

### SUMMARY DISPOSITION ORDER
(By: Hiraoka, Presiding Judge, Wadsworth and Guidry, JJ.)

Defendant-Appellant Luavalu Sagapolutele

(**Sagapolutele**) appeals from the "Judgment of Conviction and

Sentence" (**Judgment**) filed on November 6, 2023 by the Circuit

Court of the First Circuit (**circuit court**).[1]

---

[1]     The Honorable Catherine H. Remigio presided.

Sagapolutele was indicted on April 1, 2022, on charges of Robbery in the First Degree, in violation of Hawaii Revised Statutes (**HRS**) § 708-840(1)(b)(i) (2014) and/or § 708-840(1)(b)(ii) (2014), and Burglary in the First Degree, in violation of HRS § 708-810(1)(c) (2014).  Following a jury trial, Sagapolutele was found guilty as charged, and was sentenced to concurrent twenty-year and ten-year terms of imprisonment.

On appeal, Sagapolutele raises several points of error, contending the circuit court erred in: (1) denying his requests for new court-appointed counsel, and his counsel's (**defense counsel**) requests to withdraw as counsel; (2) denying defense counsel's request for "a continuance to investigate the witnesses that [Sagapolutele] wanted [defense counsel] to bring to trial"; (3) finding "that [Sagapolutele's] absence from his own trial was voluntary"; (4) allowing police testimony that identified Sagapolutele as "the person seen in [video footage] committing the crime in question," thereby "allow[ing] police testimony to invade the province of the jury"; and (5) sentencing Sagapolutele "without considering the letter from the complaining witness which recanted his entire testimony." Sagapolutele further contends that defense counsel was ineffective, and that there is insufficient evidence to support his conviction.

Upon careful review of the record, briefs, and relevant legal authorities, and having given due consideration to the arguments advanced and the issues raised by the parties, we determine that Sagapolutele's first point of error is dispositive of this appeal.[2]

Sagapolutele contends that the circuit court erred in denying his requests for new court-appointed counsel, and defense counsel's requests to withdraw, on the basis that there had been a "complete breakdown of communication" and that Sagapolutele "had irreconcilable differences" and "could not work professionally" with defense counsel. We review the circuit court's denial of these requests under the abuse of discretion standard. State v. Plichta, 116 Hawai‘i 200, 214, 172 P.3d 512, 526 (2007); see also Hawai‘i Rules of Penal Procedure Rule 57 ("Withdrawal of counsel shall require the approval of the court[.]").

---

[2]     Sagapolutele also argues, for the first time on appeal, that the evidence adduced was insufficient to support his conviction "given that the complaining witness recanted [in a letter submitted before the sentencing hearing], and given that the testimony of the officers was improper and should have been stricken." We ordinarily review "challenges to the sufficiency of the evidence . . . on appeal, . . . because the Double Jeopardy clause bars retrial of a defendant once a reviewing court has found the evidence at trial to be legally insufficient to support the conviction." See State v. Davis, 133 Hawai‘i 102, 115, 324 P.3d 912, 925 (2014) (cleaned up). Sagapolutele fails, however, to explain how these alleged errors resulted in insufficient evidence to support his conviction, and "[p]oints not argued may be deemed waived." Hawai‘i Rules of Appellate Procedure Rule 28(b)(7).

3

The record reflects that defense counsel made multiple requests to withdraw. Defense counsel first orally requested to withdraw during jury selection, on the basis that Sagapolutele did not think defense counsel had done her "due diligence," and that her legal advice was "not in his best interests." Defense counsel explained to the circuit court that,

> I do understand we are in the process of picking a jury. This issue has come up and I have tried to resolve it several times.
> And I would just say, without going into the specifics of our attorney-client privilege conversations, that **Mr. Sagapolutele believes at this time I have not done my due diligence in calling certain witnesses, and, uh, he believes my advice is -- has been not in his best interests.** So given that, he's asked for myself to be removed at this time.

(Emphasis added.)

After asking the deputy prosecuting attorney to leave the courtroom, the circuit court questioned defense counsel and Sagapolutele. When asked whether he agreed with what defense counsel said, Sagapolutele replied "[y]es," and that he "[thought] that [it was] in [his] best interest to file that motion." Sagapolutele declined to speak more about the conflict on the basis of attorney-client privilege.

The circuit court stated that "[they] haven't even started the trial portion so who knows if [they] are [going to] call the witnesses or not." Defense counsel replied that she was "not prepared to call any witnesses." She also explained that she and Sagapolutele disagreed as to whether witnesses

should be called, and that she "[thought] [the witnesses Sagapolutele wanted to call] may open the door . . . to things that aren't relevant."

The circuit court denied defense counsel's request to withdraw,[3] stating,

> I haven't been given too many specifics. **The issue of witnesses, uh, the court indicates that we haven't even gotten to the point of the trial where witnesses are being called. [Defense counsel] is an experienced attorney. She has the ability to give Mr. Sagapolutele her advice. And whether he wants to take it or not, obviously I've already told him it's his decision if he wants to testify** even if it's against your advice, and that's all going to be the case.
> But **when it comes to the rest of it, witnesses and all of that other stuff, the court's not going to get involved in that. From what I've heard already, we are not there at this point.** And I don't know if we'll get there. In the end maybe the appellate courts will have to make this decision once more is known about who these witnesses are and if they actually do or do not testify. But at this point in the proceedings, no witnesses have been not called and therefore the court's [going to] deny the request to withdraw as counsel.

(Emphasis added.)

Defense counsel orally renewed her request to withdraw at the close of the first day of trial, explaining that,

> [R]ight before we started trial or started the afternoon session, that is when Mr. Sagapolutele refused to come to the court to his trial. I did have an opportunity to go back there to see if I could resolve the situation. At that point **it was made clear to me that the communication had stopped.**
> **His refusal to -- well, his refusal to participate in the defense renders me pretty much useless.** And I get that the State is -- is going to great lengths to finish this trial, but the fact remains is that **I have a breakdown of**

---

[3] After the circuit court denied the motion to withdraw, defense counsel moved for a continuance, on the ground that "at [that] point [she] need[ed] to explore Mr. Sagapolutele's wishes to possibly call a witness." The circuit court denied defense counsel's request for a continuance without prejudice to the filing of a written motion.

>           **communication when my client refuses to work with me**.  I
> think at that point representation [has] to cease.
>           I -- these are very rare circumstances.  I -- I have
> not been in this position before.  I am uncomfortable
> proceeding given what the State has put on the record as
> allegations which have not been proven.  **On the one hand I
> cannot break the confidences of my client and I have to
> protect his interests, but I think there is a competing
> interest here.  My own I guess I'll label it.**
>           Um, so I -- I can only think of the course of action
> of asking to -- to withdraw.

(Emphasis added.)

The circuit court declined to rule on the renewed oral request to withdraw until defense counsel could submit a written motion, and the motion was heard.  The circuit court explained,

> [I]t's hard because there's not a lot -- there's a lot --
> there's a lot underneath that's being said, and it's
> difficult to make decisions based on things that are not
> being said.  So I think we need a couple of days to reflect
> on this and for me to make a decision based on what I
> believe to be [defense counsel's] ability or inability to
> continue in this case.  It's something that I'm very much
> considering.

On February 28, 2023, defense counsel filed a written motion to withdraw as Sagapolutele's counsel.  Defense counsel represented that the motion was brought "based on [Sagapolutele's] right to the effective assistance of counsel, and his right to appointed counsel," pursuant to article I, section 14 of the Hawaiʻi State Constitution, and the Sixth and Fourteenth Amendments to the United States Constitution. Defense counsel's declaration represented that "[t]he breakdown in communication between [defense counsel] and [Sagapolutele was] irreparable," and that "[defense counsel] cannot continue

to conduct [Sagapolutele's] trial without communicating with [Sagapolutele]."

Sagapolutele refused to appear at the March 1, 2023 hearing on defense counsel's motion to withdraw. At the hearing, defense counsel raised conflict of interest concerns. As she explained,

> The first oral motion to withdraw as counsel was coming from my client. And this motion -- and for his reasons of my representation.
> This motion that was filed yesterday is not based off of Mr. Sagapolutele's desires. I have never in all my years of practice filed a motion to withdraw in the middle of trial, and I think that should say a lot. I'm not -- I'm not bootstrapping as it's characterized as by the State.
> **Given my last interaction with Mr. Sagapolutele, I believe now, despite whatever he says, there is a divergence of interest here, and I am with this motion protecting my own interests. And I don't think that can be done with my continued representation because if I continue to represent him, his interests, I need to represent his interests. And I -- I simply do not think I'm in a position to do so.**
> So I understand the court's inclination. I'm putting that on the record. And I have a strong suspicion that he's not [going to] show up. So if that is the case and with the court's inclination, I'm going to go through this trial. And **not only is my own well-being at jeopardy. I will face, you know, an ineffective claim. And I'm just -- I don't think that at this point that it's fair to myself.**

(Emphasis added.)

The circuit court expressed its inclination to deny defense counsel's motion to withdraw, explaining,

> I've made my position clear. Um, I understand everyone's constraints. I have the same concerns that everyone has, but I have to go by what is filed in the motion and I have to follow the law which requires me to give [Sagapolutele] an opportunity to speak with me about this motion so I can have a full discussion about it with him.
> I don't know if he'll come. I don't know what he'll say. I don't know if he'll say anything that will convince me to grant the motion. But I still have to go that route.

> **[Defense counsel] has not said anything about anything else except physically being unable to communicate with [Sagapolutele], but I believe that [defense counsel] has done what she needs to do to protect herself as far as any future motions that come up. And that's all -- that's all we can do at this point.**

(Emphasis added.) The circuit court later denied the motion stating that "situations where counsel is hampered either by a difference in opinion on who to call as witnesses or an allegation that suddenly the defendant is no longer satisfied with counsel's representation" are insufficient reasons to allow withdrawal of counsel.

Defense counsel again renewed her request to withdraw after the prosecution rested. Sagapolutele was still refusing to appear at trial. Defense counsel represented that,

> [A]t this point I'm renewing my request to withdraw as counsel. It is my intention to call Mr. Sagapolutele as that is what the plan was. And I don't have his permission to not call him and he has a right to testify. If I don't call him, that makes me ineffective.

Defense counsel expressed several times that her "license [was] on the line," and that she was "trying to protect [her] own license" by requesting to withdraw. She stated that, "[she] still believe[d] that without [Sagapolutele's] testimony [she] [could not] do [her] job."[4]

---

[4] Defense counsel also asked for a continuance "to see if [she could] visit [Sagapolutele] at O-Triple-C"; defense counsel's request was denied.

Defense counsel further expressed concern that she was not able to advise Sagapolutele of his right to testify or not testify. As she explained to the circuit court,

> [M]y issue is **he is without counsel at this -- at this moment**, and so the ramifications of him testifying or not testifying, those I think have to be disclosed to him. Um, I -- and I -- I recognize the court can do whatever it wants. **I just don't think at this point he's represented. Or he refuses to speak with me so I can't give that advice.** Uh, I'm not comfortable giving that advice in cellblock. . . .
>
>                 . . . .
>
>                 . . . **My objection is at this point he's without counsel.** Normally before Tachibana occurs I have an opportunity to explain the pros and cons. And the court is right, it's his decision. Even if I want him to testify, he can make that decision. **My objection is that he's not had that counsel.** Um, so any inquiry by the court I don't think would be -- what's the word? -- under counsel.

(Emphasis added.)

The circuit court did not allow counsel to withdraw until after the conclusion of trial and the jury had returned its verdict.

In <u>State v. Harter</u>, the Hawai‘i Supreme Court explained that,

> **Before ruling on a motion to substitute counsel based upon a breakdown in communication or an irreconcilable difference, a trial court must conduct a "penetrating and comprehensive inquiry" into the nature of the relationship between the defendant and counsel.** This inquiry is not only required for the trial court to make an informed decision, but it also should seek to "ease the defendant's dissatisfaction, distrust, and concern."
>
> Thus, when a motion to substitute counsel is based upon a breakdown in communication or an irreconcilable difference between counsel and client, **the trial court "may need to evaluate the depth of any conflict between defendant and counsel, the extent of any breakdown in communication, how much time may be necessary for a new attorney to prepare,**

> **and any delay or inconvenience that may result from the substitution."**
>
> . . . .
>
> Once the court has gained information regarding the breakdown in the attorney-client relationship through such questioning, the court may then more accurately evaluate the extent of the conflict and determine whether there is any action that may be taken in an effort to repair the attorney-client relationship. Depending on the extent of the breakdown, the trial court, for example, may continue the motion for substitution of counsel to give the defense counsel and the defendant an opportunity to resolve their differences.

134 Hawaiʻi 308, 328-29, 340 P.3d 440, 460-61 (2014) (emphasis added) (citations omitted).

Here, the record reflects defense counsel's repeated representation that there was "a complete breakdown in [her] communication" with Sagapolutele, as well as "irreconcilable differences" with regard to defense strategy. Given these representations, we conclude that the circuit court acted beyond its discretion in denying defense counsel and Sagapolutele's requests for new appointed counsel without conducting a "penetrating and comprehensive inquiry" of the sort necessary to discern "the nature of the relationship between [Sagapolutele] and [defense] counsel," and that Sagapolutele's right to effective assistance of counsel was therefore not adequately protected. See id. at 329, 340 P.3d at 461 (citation omitted).

Defense counsel, moreover, represented that the circumstances giving rise to Sagapolutele's complete rejection of her legal assistance had created a conflict of interest.

10

> **A trial judge is required to conduct a "penetrating and comprehensive" inquiry when he or she "reasonably should know" that a conflict of interest exists.** Once this duty to inquire is triggered, "it cannot be discharged by a perfunctory inquiry," but rather, the duty is only met with **"probing and specific questions"** about the potential conflict.
>
> The strict requirement imposed upon trial courts to inquire into a potential conflict of interest is consistent with the long recognized principle "that the Sixth Amendment right to counsel contains a correlative right to representation that is unimpaired by conflicts of interest or divided loyalties." Generally, "a conflict exists when an attorney is placed in a situation conducive to divided loyalties, and can include situations in which the caliber of an attorney's services may be substantially diluted."
>
> . . . .
>
> Therefore, a circuit court's "good cause" inquiry, when there is a potential conflict between the defendant and defense counsel's personal interests, should address whether the representation would be "conducive to divided loyalties." In light of the Hawaiʻi Rules of Professional Conduct's guidance on conflicts of interest, the court should consider asking questions regarding the following:
>
> - the basis for the conflict of interest;
>
> - the potential that the conflict would materially interfere with defense counsel's independent professional judgment in considering what actions to pursue on behalf of the client;
>
> - the possibility that the conflict might foreclose defense counsel from taking courses of action that reasonably should be pursued on behalf of a client; and
>
> - defense counsel's opinion on whether his or her representation would be adversely affected.

Id. at 324-25, 340 P.3d at 456-57 (emphasis added) (citations omitted).

As in Harter, defense counsel represented on the record that she had a "personal interest [in] protecting herself professionally" and that this interest "would jeopardize [Sagapolutele's] right to the effective assistance of counsel."

See id. at 325, 340 P.3d at 457. And as in Harter, the record demonstrates a conflict of interest due to defense counsel's personal interest, and that the circuit court should have asked the "probing and specific questions" necessary to elicit any information to the contrary. See id. at 324, 340 P.3d at 456 (citation omitted).

Defense counsel clearly asserted that defense counsel could not, under the circumstances, continue to effectively represent Sagapolutele. Sagapolutele represented that he thought it would be in his best interest for defense counsel to withdraw. The circuit court should have conducted inquiries necessary to determine whether withdrawal of counsel was necessary to protect Sagapolutele's constitutional rights. On this record, we conclude that the circuit court erred by not permitting defense counsel to withdraw, and by not appointing a new court-appointed counsel to represent Sagapolutele without first conducting the Harter inquiries.[5]

_____

[5] We are mindful that defendants in criminal cases do not have a right to pick and choose their court-appointed counsel, and we clarify that our ruling is not based on Sagapolutele's decision to voluntarily absent himself from his own trial in protest of appointed counsel. See State v. Torres, 54 Haw. 502, 504, 510 P.2d 494, 496 (1973) ("[T]here is no absolute right, constitutional or otherwise, for an indigent to have the court order a change in court-appointed counsel."); State v. Vaimili, 135 Hawaiʻi 492, 501, 353 P.3d 1034, 1043 (2015) ("Trial may continue . . . in certain circumstances when a defendant is voluntarily absent."). Our disposition is based on the record before us, which exhibits a clear and complete breakdown of communications between defense counsel and Sagapolutele. On this record, defense counsel's withdrawal was necessary to protect Sagapolutele's constitutional rights and to address defense counsel's conflict of interest.

For the foregoing reasons, we vacate the circuit court's Judgment, and remand for a new trial.

DATED: Honolulu, Hawaiʻi, May 30, 2025.

On the briefs:

Kai Lawrence,
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge